[Civ. No. 19642. Second Dist., Div. Three. Mar. 8, 1954.]

MASTER CHARGE (a Corporation), Appellant, v. EDWIN M. DAUGHERTY, as Commissioner of Corporations, etc., Respondent.

Buchalter, Nemer & Fields, Murray M. Fields and Leonard S. Beck, for Appellant.

Edmund G. Brown, Attorney General, and John F. Hassler, Deputy Attorney General, for Respondent.

SHINN, P. J.—Appeal from a judgment denying a petition for a writ of mandate to require the Commissioner of Corporations to grant a permit for the issuance of capital stock by Master Charge. The application to the commissioner was denied upon the ground that Master Charge had not procured a license as a lender under the Small Loan Law, sections 24200-24261, Financial Code.

Appellant proposes to engage in business under the following plan: For a charge of $5.00 per year it will issue cards to persons deemed to be good credit risks which will entitle them to purchase, on credit, merchandise or service at stores, hotels and restaurants listed in its booklet; the card holder will sign an invoice, appellant will purchase, without recourse, at a discount of from 6 to 10 per cent such of the invoices as the creditor chooses to sell and assign to it; appellant will bill the card holder for the face amount of the invoices and the card holder will pay the same. If the card holder has personal credit with the tradesman and the purchases are charged to him directly, appellant does not acquire the account and the credit card does not enter into the transaction.

The question is whether appellant will be engaged in the business of loaning credit to its card holders. Although the briefs evidence diligent search for authority on the subject, little has been discovered in the way of precedent as to what constitutes a loan of credit.

Pertinent sections of the Financial Code are the following: " 'Lender' includes all persons who are engaged in the business of lending their own money, credit, goods, or things in action." (§ 24007.) "No person shall engage in the business of making or negotiating, for himself, or another, loans of money, credit, goods, or things in action, in the amount or of the value of three hundred dollars ($300) or less, without first obtaining a license from the commissioner." (§ 24200.) The commissioner denied the application for a permit to issue stock pursuant to an opinion of the attorney general that appellant's plan of business was one for the loan of credit for which a license was required. We do not doubt that the contemplated plan involves the loan of credit.

Appellant says that "A loan of money is a contract by which one delivers a sum of money to another, and the latter agrees to return at a future time a sum equivalent to that which he borrowed" (Civ. Code, § 1912); and it asserts that there is not in its plan of business "the slightest semblance to a loan transaction."

One argument of the appellant is that in a conventional loan transaction there is an obligation to return the thing borrowed or its equivalent, and since credit cannot be returned, it cannot be borrowed. Even the respondent says credit cannot be loaned, citing *Dry Dock Bank* v. *American Life Ins. & T. Co.*, 3 N.Y. 344, although he says further that appellant proposes to sell its credit, rather than loan it, but that there is no essential difference between a loan and a sale of credit, and therefore the statute covers sales of credit.

█ The words "loans of credit" used in the statute are to be given a meaning which fits them into the purpose to be accomplished. The definition urged by appellant would render them meaningless. And it would be ridiculous as applied to such common and well understood expressions as "lend me your ears" or "lend me a hand." However, the Legislature has said, with unquestionable authority, that there is such a thing as a loan of credit. Anything to the contrary that has been said by courts or commentators must be disregarded.

█ No doubt the Legislature acted advisedly when it determined there were businesses consisting of the loan of credit, and that they should be regulated. One reason for that action is the fact, stated in 55 American Jurisprudence 343, section 25, "It is well settled that the usuary law is inapplicable to a transaction amounting merely to a loan or sale of credit, and a loan of money, to facilitate which a loan of credit is made, is not rendered usurious by the payment of, or agreement to pay, a sum exacted for a loan of credit."

The Legislature has only recognized the existence of a common business practice. █ When a man guarantees payment of a friend's note to enable him to borrow money it is a loan of credit. (See *Morgan* v. *Shepherd*, 171 Ga. 33 [154 S.E. 780].)

The Legislature having spoken clearly all the administrators of the law have to do is identify the business of lending credit when it appears. The attorney general, the Commissioner of Corporations and the trial court have done this, and a brief résumé of the facts will show that they were not mistaken.

 Under appellant's plan the holder of a credit card, for a consideration of $5.00 per year, paid to appellant, will acquire the right to make use of appellant's credit for a given time and to a limited extent. It is a temporary use. When he reaches that limit, or when he ceases to become a member, he may no longer use appellant's credit, that is to say, its financial standing and responsibility, but must rely upon his own. Following appellant's theory of immunity from regulation a money lender could make a business of guaranteeing his customer's loans at a bank and charging the customer for the loan of his credit, thus attempting to evade the usury laws. The obvious purpose of the law in question is to forbid the use of credit as a substitute for money in what would be usurious transactions if money were loaned directly. Appellant, of course, may increase its annual charge, or impose others, and although its proposed charges are small, the nature of its business is not determined by the amount its card holders may pay for the service.

 Appellant says it would be impossible for it to comply with all the requirements of the law, specifying several sections which apply to loans of money which would not be applicable to loans of credit. Its argument seems to be that since compliance on its part would be impossible, as, for example, delivery to the borrower of a statement showing the amount received by him, and the balance due on the loan (§ 24473), it cannot be required to do the impossible, and therefore is not subject to regulation. The obvious answer is that the requirements of the law that could apply only to loans of money were not intended to apply to loans of credit, and appellant would not be expected to comply with them.

 Appellant says further that it proposes to do only what oil companies are allowed to do through the use of credit cards. We suppose the point is that since the practice is permitted it must be lawful. But the premise is erroneous. The methods are not the same. The customer of the oil company obtains the credit card on his own credit and the company is his only creditor. The dealer delivers products to the customer and charges the oil company, not the customer. Thus the company extends credit to the customer and the dealer extends credit to the company. There is no lending of credit. Extending credit is not loaning it.

The Corporation Commissioner found that it had not been shown that appellant proposes to transact its business fairly and honestly, but this finding was doubtless based upon the

fact that appellant does not intend to become licensed. The commissioner does not urge anything else as support for the finding, and we attach no importance to it.

The judgment is affirmed.

Wood (Parker), J., and Vallée, J., concurred.