Michael Pliakos, Plaintiff-Appellee, v. Illinois Liquor Control Commission, and Loren B. Sackett, Chairman, W. Willard Wirtz, Commissioner, Howard S. Cartwright, Commissioner, and Joseph H. Schiffman, Secretary of Illinois Liquor Control Commission, Defendants-Appellants.

### Gen. No. 46,919.

First District, Second Division.

November 27, 1956.

Rehearing denied December 11, 1956.

Released for publication January 8, 1957.

Latham Castle, Attorney General of State of Illinois, for defendants-appellants; William C. Wines, Raymond S. Sarnow, A. Zola Groves, and Edward M. White, Assistant Attorneys General, all of Chicago, of counsel.

Halfpenny & Hahn, and Edwin S. D. Butterfield, both of Chicago, for appellee; James F. Flanagan, and Richard F. Hahn, both of Chicago, of counsel.

JUDGE SCHWARTZ delivered the opinion of the court.

This is an appeal from an order of the Circuit court of Cook county reversing an order of the Illinois Liquor Commission, herein called the State Commission. Plaintiff, a retail liquor dealer, obtained a local liquor license and then made application and obtained a license from the State Commission, both licenses being required for the retail sale of liquor. While these licenses were in effect the State Commission instituted a proceeding, heard evidence and entered an order revoking his state license. He thereupon filed a complaint in the Circuit court pursuant to the Administrative Review Act seeking to review the decision of the State Commission. In that complaint he alleged that as a matter of law the State Commission has no power to initiate a proceeding for revocation of a state license but is limited in its jurisdiction over retailers to reviewing orders of local commissions and to revoking state licenses automatically upon the revocation of local licenses by local commissioners. (Article VII, Sec. 6, Liquor Control Act, Ill. Rev. Stat. 1955, Ch. 43, Par. 150.) Defendants moved to strike the complaint, contending that the State Commission under the Act as amended in 1955 has appellate jurisdiction over orders of local commissions and original jurisdiction to institute proceedings and to revoke retail licenses. The trial court overruled defendants' motion to strike and

171

reversed the order of the State Commission. Thereupon an appeal was taken to this court.

Section 12, Article III of the Act [Ill. Rev. Stats. 1953, ch. 43, § 108] prior to the 1955 amendments granted power to the State Commission to issue and revoke licenses to manufacturers, importing distributors, distributors, *retailers,* non-beverage users, railroads, including owners and lessees of sleeping, dining and cafe cars, and boats. Standing alone, the paragraph clearly gave the State Commission authority to revoke as well as to issue licenses to retailers. This provision of the Act (Sec. 12 (1)), was amended in 1955 to give power to the State Commission to issue state licenses both to non-retailers and to retailers and *"to suspend or revoke* such licenses upon the State Commission's determination, upon notice after hearing, that a licensee has violated any provision of this Act or any rule or regulation issued pursuant thereto and in effect for thirty (30) days prior to such violation." The changes made insofar as they affect the power to revoke are:

1. Inclusion of right to suspend,
2. Requirement of notice and hearing,
3. Limitation of the grounds of suspension and revocation to the violation of any provision of the Act and any rule or regulation issued pursuant thereto *and in effect for 30 days prior to such violation.*

Thus, as in the original Act, Section 12 now grants specific power to the State Commission to revoke both retail and non-retail state licenses, but it subjects that power to the limitations before stated.

Plaintiff contends that, as in the original Act, other provisions of the present Act and the overall plan to divide control of the liquor traffic between state and local authorities reveal that it was the intention of the legislature to restrict the State Commission's power of revocation to proceedings on appeal. In support of

172

his position he relies heavily on the case of Retail Liquor Dealers Protective Ass'n of Illinois v. Fleck, 408 Ill. 219, 96 N.E.2d 556 (1951) decided before the 1955 amendments. In that case the plaintiff obtained a local license and made application to the State Commission for a state license. The State Commission assumed the power to investigate and determine whether the plaintiff was a proper person to whom a license should be issued. The Supreme Court held that the State Commission did not have such power, reversing the decision of this division of the Appellate Court (Retail Liquor Dealers Protective Ass'n of Illinois v. Fleck, 341 Ill. App. 283, 93 N.E.2d 443 (1950)). It should be noted at the outset that the instant case turns on the question of revocation and not on the issuance of a license. It is a distinction to be kept in mind in the consideration of this case. The decision in the Fleck case was based upon the general plan of the legislation for division of power between state and local authorities and on various provisions of the original Act which appeared to be in conflict with the express grant of power given to the State Commission in Section 12. It is therefore necessary to consider the changes that have been made by the 1955 amendments.

The original Act prohibited the State Commission from issuing a license to a retailer unless the person applying for such license should have obtained a local license, and made it the duty of the State Commission to issue a retailer's license when such person had obtained a local license, made application to the State Commission and paid the license fee (Art. III, Sec. 13 [Ill. Rev. Stats. 1949, ch. 43, § 109]). This provision stood without qualification at the time the Fleck case was decided and was an important if not a decisive factor in the court's decision. The 1955 amendments, however, added a proviso that the issuance of such a license *should not prejudice the State Commission's action in subsequently suspending or revoking such*

173

*license if it is determined by the State Commission,
upon notice and after hearing, that the licensee has,
within the same or a preceding license period, violated
any provision of the Act or any rule or regulation is-
sued pursuant thereto.* It will be noted that the lan-
guage used in this proviso requiring notice and hear-
ing and limiting the grounds of revocation is like that
of Section 12, Article III of the Act as amended in
1955. The amendments to Sections 12 and 13, reason-
ably construed, show that the legislature intended to
make clear and unequivocal its grant of power to the
State Commission to revoke retailers' licenses within
the limitations set forth in the amendments.

Another amendment made in 1955 has a bearing on
this issue, particularly as it relates to the controlling
effect of the Fleck case (Subparagraph 6, Section 12,
Article III (Ch. 43, Par. 108, Ill. Rev. Stat. 1955)).
Under Section 12, Article III of the original Act, the
State Commission was given authority to inspect prem-
ises where alcoholic liquors were manufactured, dis-
tributed or sold. However, it was provided in the orig-
inal Act that where a local license was required, such
inspection should be for the sole purpose of ascertain-
ing whether a retailer's license had been obtained. It
was argued in the Fleck case that this showed the leg-
islature did not intend the State Commission to have
control over retailers, but that its action both as to
issuance and revocation should follow the action of the
local commissions. *This provision has been eliminated
by the 1955 amendments.* Thus the legislature removed
one of the grounds which gave support to the view that
the State Commission did not have power to revoke
while a local license was still in effect.

Another amendment which reveals the intention of
the legislature to grant authority for revocation is con-
tained in Article VII, Paragraph 6 (Ch. 43, Sec. 150,
Ill. Rev. Stat. 1955). As it originally stood, this para-

174

graph provided that proceedings for the revocation of non-retailers' licenses should be before the State Commission, and the only statement with respect to the revocation of *retailers'* licenses was a proviso that the revocation of a local license should automatically result in the revocation of a state license. In 1955, after again making provision for the revocation or suspension of licenses to non-retailers, the legislature added this language: ". . . and all proceedings for the revocation or suspension of a retailer's license before the State Commission shall be in accordance with rules and regulations established by it not inconsistent with law." The natural and reasonable interpretation of this clause is that when a license is revoked by a local license commission, the State Commission must automatically revoke the state license, but when proceedings are instituted by the State Commission while a local license is in effect, the proceedings must be in accordance with rules and regulations such as that providing for notice and hearing.

■ From the foregoing we conclude that the 1955 amendments were drafted with an understanding of the effect of the Fleck case and that by these amendments the legislature undertook to do two things: first, to retain the limitation of the power of the State Commission with respect to the issuance of retailers' licenses, as it was held to exist in the Fleck case; and, second, to make certain that the State Commission had the power to revoke, limiting that power by providing for regularity in proceedings and specifying particular grounds for revocation.

■ Plaintiff argues that the broad outlines of the Act still reveal an intention to give control of non-retailers to the State Commission and control of retailers to local commissions, except as to an appellate power to be exercised by the State Commission. This, he says, is inconsistent with the power of the State

175

Commission to initiate proceedings to revoke, thus giving the State Commission both appellate and original jurisdiction of the same subject matter. True the arrangement created appears to be overlapping and unusual, yet it is not without parallel in both our federal and state governments. The Illinois Liquor Control Act obviously is the product of the stubbornly held and widely conflicting views of the advocates of local control of the liquor traffic and the advocates of state control, as the Attorney General of the State of Illinois indicated in an opinion filed by him in 1934 interpreting the Act at the time of its adoption. (Illinois Attorney General's Reports & Opinions, 1934, p. 84.) The line between the contending forces was drawn upon the demand by one side that the State Commission have discretionary power over the issuance and revocation of all licenses and the demand by the other that the State Commission have no power with respect to local licenses. Finally, by the 1955 amendments an accord was reached whereby the State Commission was required to issue a state license automatically upon the issuance of a local license and its power to revoke was limited in the manner we have before stated. As always in such a case the statute is not a model of symmetry nor is it perfect in design, but the intention is clearly expressed, and even though it leads to a system of dual control and divided responsibility, it cannot be amended by judicial interpretation.

Plaintiff's counsel have eloquently argued that this is "but another of the many examples of the grasp for power which seems to be a normal and congenital phenomenon flowing from delegation of legislative power." They appeal to this court to exercise a restraining hand on this effort of the bureau to extend its jurisdiction "beyond the clear and explicit mandate of the legislature." This reveals the violence of the controversy which seems ever to beset the regulation

176

of the sale of intoxicating liquors. Although pursued by thousands, the business is not protected by the organic law and is not one of the privileges and immunities of citizens of the United States. The traffic therein is permissive only. Saladino v. City of South Beloit, 9 Ill.2d 320 (1956). In one generation we have witnessed the volatile character of public policy in relation to alcoholic liquor—going from almost unrestrained manufacture and sale to strict regulation, to the Prohibition Amendment, then to repeal of that constitutional amendment and back to regulation. It reflects in turn man's ambivalence toward the product of grape and grain. It has been called by some "embalmed sunshine," and "the growth of God." In ecstasy the poet has exclaimed, "Ah, with the grape my failing life provide, and wash the body whence the life has died." Tall glasses have been lifted a thousand thousand times to "That blessed land where cocktails float on air and highballs roll on the ground." On the other hand, there have been those who saw in it the "Devil's curse," and "An enemy that man puts into his mouth to steal away his brains." The frustrating and surely not serious slogan of the maids of the prohibition crusade, "Lips that touch wine shall never touch mine," still rings in our ears. In the solution of the problems arising out of this ancient controversy, there is no room for breadth of policy in the interpretation of statutes. We must do our best to take the current word and interpret it with as much detachment as we may command and take no counsel of any predilection for home rule which citizens of a great metropolis generally cherish.

The order of the Circuit court is reversed.

Order reversed.

ROBSON, P. J. and McCORMICK, J., concur.