Canadian Ace Brewing Co., Appellee, v. Swiftsure Beer Service Company, Appellant.

Gen. No. 47,224.

First District, First Division.

March 10, 1958.

Rehearing denied and opinion modified May 6, 1958.

Released for publication May 6, 1958.

David, Fainman & Abrahams, Abraham W. Brussell, of Chicago (Sigmund W. David, Abraham W. Brussell, and Arthur C. Chapman, of counsel) for defendant-appellant.

Schultz, Lippman & Biro, of Chicago (Allen H. Schultz, Louis L. Biro, and Robert Karmel, of counsel) for plaintiff-appellee.

JUSTICE ROBSON delivered the opinion of the court.

This is an appeal from a judgment on the pleadings entered in favor of plaintiff and against defendant ordering defendant to pay plaintiff $192,206.18, a sum based on the finding of an account stated between the parties for $183,800, together with the finding of an additional indebtedness in the amount of $8,406.18. Several questions are presented.

Plaintiff is a brewery; defendant a wholesale distributor of beer. The pleadings reveal a history of fifteen years of dealing between the two companies which has culminated in the various charges and countercharges that comprise this lawsuit. The facts are presented solely by the pleadings.

Plaintiff's original statement of claim alleged that defendant was indebted to it in the sum of $192,206.18. The defendant then filed a motion to make the statement more definite and certain or in the alternative for a bill of particulars. Plaintiff filed an amended statement of claim, alleging in substance as follows: That from January, 1941, until July, 1956, defendant was a distributor of plaintiff's beer in the Chicago area; that on or about March 1, 1955, plaintiff and defendant accounted together for the purpose of determining the amount due plaintiff from defendant for the sale and delivery of beer up to and including February 28, 1955; that plaintiff and defendant continued to have dealings subsequent to March 1, 1955, during which time defendant acknowledged its indebtedness to plaintiff in the amount of $185,736.94 and accepted a credit of $2,789.59 upon transactions between March 1, 1955, and December 31, 1955; that from January 1, 1956, to July 19, 1956, plaintiff made numerous additional sales and deliveries of beer to defendant for which defendant is indebted to plaintiff in the sum of $8,406.18; that defendant made payments to plaintiff on the account stated of $185,736.94 in the total sum of $1,936.94; that plaintiff made repeated demands for payment which were refused by defend-

56

ant; wherefore plaintiff prays judgment in the sum of $192,206.18, plus interest.

Attached to the statement of claim as exhibits A, B, C and D are: Plaintiff's statement of defendant's account as of March 31, 1955; a statement from a firm of certified public accountants indicating a balance due plaintiff from defendant of $185,736.94, and bearing a notation by one David P. Fisher for defendant that this amount represented a correct balance; plaintiff's statement of account crediting defendant with payments totaling $1,936.94 against the aforementioned balance of $185,736.94; and fifty-three photostatic copies of ledger sheets purporting to show purchases, payments and credits between the parties for the period from January 1, 1956, through July 19, 1956.

Defendant in its answer admits that commencing January 2, 1941, and until July 19, 1956, it operated as a distributor of plaintiff's beer in the Chicago area; denies that on or about March 1, 1955, plaintiff and defendant accounted together for the purpose of determining the amount due plaintiff from defendant for the sale and delivery of beer up to and including February 28, 1955, and further denies that upon any accounting it was mutually determined and agreed by the parties that as of February 28, 1955, defendant was indebted to plaintiff in the sum of $185,736.94, or in any other sum; admits receiving the accountant's statement marked exhibit B and attached to the amended statement of claim, but denies that said exhibit was, or was intended to be, a statement of account between the parties; admits that it made payments in cash to plaintiff during March, May, June, and July, 1956, but denies that there was, or now is an unpaid balance due and owing of either $185,736.94, or $183,800, and denies further that a repeated demand was made for the payment of either amount; denies that it is indebted to plaintiff in the sum of

$8,406.18 upon sales and deliveries of beer during the period January 1, 1956, to July 19, 1956; denies that the defendant has been requested to make payment in the sum of $183,800, or in any other sum, and denies further that said sum, or any other sum is the balance due on any account stated, or that there is an account stated between the parties.

The answer also contains eight separate allegations of affirmative defense. Six are to the effect that plaintiff's action is barred by the Illinois Liquor Control Act, and two to the effect that plaintiff's action is barred by an agreement between the parties. The contention with regard to the Liquor Control Act is that Section 4 of Article VI (Ill. Rev. Stat. 1957, ch. 43, sec. 122) specifically forbids any action by a brewer against a distributor to recover the purchase price of beer where the brewer has allowed the distributor to postpone payment of the purchase price for a period in excess of fifteen days. The alleged agreement between the parties involves a contract for special services to be rendered plaintiff by defendant in return for which services defendant was allowed the privilege of deferring payment for beer received from plaintiff unless, and until, defendant's business showed a substantial profit.

Plaintiff filed a motion for judgment on the pleadings. This was argued, but before decision defendant filed a motion to amend its answer with two additional allegations of affirmative defense and two counterclaims, one for breach of contract, and an alternative claim in quasi-contract, both founded on the special services allegedly performed for plaintiff by defendant. This motion was denied. Judgment was granted on the pleadings and defendant appeals therefrom.

Both parties have presented extensive interpretations of the particular rules of law which each considers applicable to a determination of this appeal. The factual background as revealed by the pleadings

is, at best, vague and imprecise. It is the primary contention of plaintiff that the pleadings support the findings of an account stated and additional indebtedness, neither of which is barred by the Liquor Control Act or the alleged contract for special services. Defendant alleges as error three separate grounds: (1) That the Liquor Control Act expressly forbids the action; (2) that the alleged contract constitutes a valid affirmative defense; and (3) that the trial court erred in granting plaintiff judgment on the pleadings because the answer averred explicit denials of essential allegations of the amended statement of claim. An analysis of the facts as shown by the pleadings indicates the following legal issues: (1) Whether or not the pleadings support the findings of an account stated; (2) whether or not the pleadings support the finding of an additional indebtedness for $8,406.18; and (3) whether or not the Illinois Liquor Control Act bars this action.

■ To resolve these issues we must first decide whether the trial court should have allowed defendant to file its proffered amendments to its answer to be considered a part of the pleadings. Plaintiff's motion for judgment on the pleadings was pending and there had been no decision by the trial court when defendant sought leave to amend its answer. This motion raised the sufficiency of the pleadings, as a matter of law, and put in issue both plaintiff's right to relief and defendant's right to a hearing on the merits. Milanko v. Jensen, 404 Ill. 261 (1949). Amendments to the pleadings may be allowed on just and reasonable terms at any time before final judgment. Ill. Rev. Stat. 1957, ch. 110, sec. 46 (1).

An examination of the profferred amendments discloses that they properly pertained to the motion then pending before the trial court. To reach a decision, it was essential that the court consider all contentions which were a part of the defense. We are of the opinion

59

that under the circumstances the trial court erred in denying defendant's motion for leave to file its amendments. This conclusion, however, pertains only to plaintiff's motion for judgment on the pleadings. If a motion to strike is made by plaintiff on remandment, the trial court will have to consider that motion on its merits.

■ ■ As to the first issue, an account stated is an agreement between two parties which constitutes a new and binding determination of the balance due on indebtedness arising out of previous transactions of a monetary character, containing a promise, express or implied, that the debtor shall pay the full amount of the agreed balance to the creditor. The State v. Illinois Central R. R. Co., 246 Ill. 188, 241 (1910); Chase v. Bramhall, 343 Ill. App. 171 (1951); Pure Torpedo Corp. v. Nation, 327 Ill. App. 28 (1945); Dean & Son v. W. B. Conkey Co., 180 Ill. App. 162 (1913). The agreement must, of course, manifest the mutual assent of both the debtor and the creditor, although such assent may be inferred from the retention by one of the parties of a statement of account, rendered by the other, for an unreasonable time and without objection. Pure Torpedo Corp. v. Nation, supra; Dean & Son v. W. B. Conkey Co., supra; 6 Williston on Contracts, sections 1863, 1864; Restatement of Contracts, vol. 2, sec. 422.

In the instant case the answer of defendant expressly denied the mutual assent of the parties. Plaintiff's exhibit B, attached to the statement of claim, is a statement of account submitted to defendant by a firm of certified public accountants. It bears a notation by one David P. Fisher, for the defendant, containing an objection to the stated balance and a correction thereof. The proffered amendments to the answer of defendant expressly deny that Fisher had the authority to render an account stated for the defendant corporation. It is alleged that Fisher was a bookkeeper for

defendant. On this point the law of Illinois is not settled. It has been held that the president and the secretary of a corporation are presumed to have the authority to agree to an account stated for the corporation. Albert Pick & Co. v. Slimmer, 70 Ill. App. 358 (1897). It has been held that, in the absence of evidence that a bookkeeper had the authority to change or abrogate the provisions of a contract of employment, an account of commissions due the employee did not meet the requirements of an account stated. Peterson & Co. v. Wachowski, 86 Ill. App. 661 (1899). Where the creditor's bookkeeper prepared and mailed a statement of account to the debtor, and there was no evidence of objection by the debtor to that statement, there was sufficient presumption of assent by the debtor to present a question for the jury as to whether or not the statement constituted an account stated. Bee v. Tierney, 58 Ill. App. 552 (1895). These cases appear to support the following general statement of the law from other jurisdictions, 1 Am. Jur., Accounts and Accounting, sec. 24, p. 278:

"An account may be stated by the agents of the parties thereto, duly authorized for the purpose. It is clear, however, that a person not authorized to act for a debtor or creditor in the stating of an account cannot bind the alleged principal. It is impossible to lay down general rules as to the authority of particular agents or employees to act in the stating of an account. For example, it cannot be said that a president, a secretary, a treasurer, or a bookkeeper has or has not authority, as such, under all circumstances, to assent to an account stated, since an agent's authority to do a particular act is not wholly dependent upon the name or title by which he is designated. The rendition by a party's clerk or bookkeeper of an account showing a balance due the person to whom the account is rendered is not obligatory and binding upon the principal, in the absence of any showing that the bookkeeper or

61

clerk had any other authority than that conferred by law upon an agent of that description."

■ On the basis of the foregoing authorities, the express denials in defendant's answer, and the issue of agency as set forth in support of these denials by defendant's proffered amendments to the answer, we conclude that the pleadings did not justify the finding of an account stated as a matter of law.

The finding that defendant was indebted to plaintiff in the additional amount of $8,406.18 raises the question of the validity of the defense that this entire action is barred by the Illinois Liquor Control Act. Article VI, section 4 of that Act provides in substance as follows (Ill. Rev. Stat., 1957, ch. 43, sec. 122): (1) That it shall be unlawful for a retailer to accept, receive or borrow money, or anything of value, or accept or receive credit from any manufacturer, importing distributor or distributor, except merchandising credit in the ordinary course of business for a period not to exceed thirty days; (2) that it shall be unlawful for a manufacturer, importing distributor or distributor, to give or lend money or anything of value, or otherwise loan or extend credit (except thirty days merchandising credit) directly or indirectly to a retail licensee, his agent or representative; (3) that no retail licensee delinquent beyond the thirty days permitted for merchandising credit, shall accept credit or purchase alcoholic liquor, and that no manufacturer, distributor or importing distributor shall knowingly extend credit or sell alcoholic liquor to a delinquent retail licensee; (4) that the purchase price of all beer sold to a retail licensee shall be paid in cash on or before delivery of the beer, allowing no credit for bottle deposits; (5) *"that the purchase price of all beer sold to an importing distributor or distributor shall be paid by such importing distributor or distributor in cash on or before the fifteenth day (Sundays and holidays excepted) after delivery of such beer to such purchaser,"* includ-

ing cash payment for bottle deposits on returnable bottles; (6) that nothing in the section shall prohibit credit sales of alcoholic liquor to purchasers who live in or maintain places of business outside of this State; (7) that *"no right of action shall exist for the collection of any claim based upon credit extended to a distributor, importing distributor or retail licensee contrary to the provisions of this section."* (Emphasis ours.)

The portions of the section on which defendant relies are italicized, namely the language providing that the purchase price of all beer sold to a distributor or importing distributor shall be paid in cash within fifteen days (Sundays and holidays excepted) after the delivery of the beer, and the short paragraph near the end of the section (the seventh provision in our summary of the section) which denies any right of action against a distributor or retailer for a claim based upon credit extended contrary to the provisions of the section. We have carefully considered the statute, the cases cited by counsel, and their respective arguments. We have also checked the legislative history of the amendment which added the italicized and quoted provisions to section 4. It was introduced in the House of Representatives as Bill No. 816. The language presently embodied in the section reflects the original text of the pertinent portions of the amendment. The journals of the House and Senate for the 1947 session of the Legislature reveal that the only revision of Bill No. 816, which was adopted, was offered in the Senate and pertained to deposits on cases of bottled beer. No amendments of the provisions with which we are concerned were offered in either the House or the Senate.

■ The Liquor Control Act is unique. Its character is a compound of regulatory, disciplinary and penal import. Lichter v. Scher, 11 Ill.App.2d 441. In

Pliakos v. Illinois Liquor Control Commission, 12 Ill.App.2d 170, aff'd 11 Ill.2d 456, we said at p. 177:

"Although pursued by thousands, the business is not protected by the organic law and is not one of the privileges and immunities of citizens of the United States. The traffic therein is permissive only. . . . In the solution of the problems arising out of this ancient controversy, there is no room for breadth of policy in the interpretation of statutes. We must do our best to take the current word and interpret it with as much detachment as we may command . . . ."

Defendant contends that it is the clear and obvious intent of the amendment to the statute to deny a brewer, manufacturer, or other wholesaler of beer, a right of action to enforce any claim against the distributor for the sale and delivery of beer not paid for in cash on or before the 15th day (Sundays and holidays excepted) after the delivery of the beer to the distributor.

Plaintiff's entire argument against this construction rests on the distinctions within section 4 between retailers and distributors which impose greater credit restrictions on retailers than on distributors. We do not find such distinctions relevant to a construction of the unambiguous provisions before us. In Weisberg v. Taylor, 409 Ill. 384 (1951), our Supreme Court held that permitting a credit of fifteen days to distributors in the sale of beer, while denying credit to retail vendors of beer, is not an arbitrary, unreasonable, or discriminatory classification. In that case, the court also held that the no-credit provision with respect to retail licensees of beer and the "fifteen-day credit limitation on distributors of beer" does not discriminate against such dealers as compared with distributors and retail dealers of other alcoholic beverages. In regard to the provision denying a right of action

64

for claims arising out of sales made contrary to the act, the court stated (p. 391):

"This provision, [the prohibition against cash sales or purchases of alcoholic liquors where delinquency exists beyond thirty days] as well as *the provision denying a cause of action to a wholesaler or manufacturer selling contrary to the provisions of the act, is in the nature of penalties or sanctions. They are conditional or additional penalties, and annexed to the law to produce obedience to that law.* They are wholly inoperative in any case so long as the credit provisions of the statute are obeyed. It is the act of the party himself in disobeying this credit restriction which brings down on his head his inability to purchase for cash and upon the wholesaler his inability to collect. *The one provision may incidentally benefit the wholesaler, and the other may incidentally benefit the retailer, but they are both a part of a legislative scheme to secure enforcement of the credit provision of the act.*" (Emphasis ours.)

In that case the original parties who filed the action for declaratory judgment were a retailer and a distributor. The distributor did not appeal from the decision of the trial court, only the retailer. The language of section 4, which imposes the no-credit limitation on sales of beer to retailers, is exactly the same as the language imposing the fifteen-day credit limitation on sales of beer by brewers or wholesalers to distributors. It is implicit in the reasoning of the opinion in the Weisberg case that the restriction that applied to retailers would also apply to distributors. Any other conclusion would be contrary to the construction placed on the Act by the Supreme Court.

■ An analysis of the statute, based on the Weisberg case, leads us to the inescapable decision that it was the intention of the legislature to deny a brewer,

manufacturer, or wholesaler of beer, the right to enforce a claim for the purchase price of beer sold and delivered to a distributor on credit extended for more than fifteen days (excluding Sundays and holidays) when the statutory provision is pleaded as a defense by the distributor. The trial court, therefore, erred in finding that defendant was indebted to plaintiff in the sum of $8,406.18 for beer sold and delivered from January 1, 1956, to July 19, 1956. It should have found that section 4 of Article VI of the Liquor Control Act barred the action for this sum.

We cannot, however, now apply the same bar to the enforcement of the debt alleged to be due on the basis of an account stated between the parties. This must be so for the same reason that we are unable to uphold the trial court's finding of an account stated on the pleadings alone. The nature of plaintiff's claim for $183,800 must be proved by evidence at trial after issue has been joined on the pleadings. We have found that the Liquor Control Act prohibits a right of action to enforce a claim founded on an extension of credit which contravenes a provision therein specifically limiting the period of time for which credit may be extended. The Act permits an extension of credit by a brewer to a distributor for a fifteen-day period. An action to recover the purchase price of beer sold and delivered to a distributor by a brewer will be allowed where credit has been extended no longer than the period permitted by the Act. Potosi Brewing Co. v. Metropolitan Distributing Co., 342 Ill. App. 131 (1950). The extension of credit to a distributor by a brewer is not illegal per se. However, a claim for payment based on the extension of credit for a period exceeding the limit prescribed by the Act is not an enforceable debt. To determine whether or not all or any part of the alleged debt of $183,800 is unenforceable, it must

66

first be determined whether or not it constitutes a claim based on credit extended in contravention of the Act.

■ ■ Prior to the adoption of the amendment to section 4 of Article VI in 1947, there was no restriction on the extension of credit from brewers to distributors. (See Ill. Rev. Stat., 1945, ch. 43, sec. 122.) The balance alleged to be due, however, is cumulative, and was based upon transactions which are alleged to have taken place from 1941 until 1955. The pleadings do not indicate the times at which the various sales and deliveries of beer took place. It is impossible to determine how much of the claim, if any, represented by the purported account stated might have been barred by section 4 of Article VI as amended in 1947. Further, although there appears to be no Illinois decision in point, it is generally well settled that an account stated may include claims of indebtedness otherwise barred by the Statute of Frauds or the Statute of Limitations. See 6 Williston on Contracts, sec. 1863; 6 Corbin on Contracts, sec. 1309; Restatement of Contracts, sec. 422, comment (d). A claim which is void because illegal will not support an account stated. White v. Turner-Hudnut Co., 322 Ill. 133 (1926). The pleadings in this case have not been settled. As a result, the final issues have not been drawn, nor proof introduced in support thereof. This is for the trial court. It is, therefore, possible that other issues may be raised which are not in the present record that will affect the final determination. In view of this, no final conclusion is possible on the various issues at this time.

Finally, defendant raised an affirmative defense of an alleged oral contract for special services. Plaintiff contends that the alleged agreement is void for lack of mutuality, vagueness, indefiniteness and uncertainty. This could only be considered on a motion to

strike and is not before us. For our purposes on the instant appeal in the absence of a competent showing of mutual assent to an account stated, the defense was pertinent to explain the nature of the claims upon which the purported account stated was founded, both for the purpose of determining whether or not there was an account stated and for the purpose of determining the applicability of the Liquor Control Act to any claims incorporated therein. While section 4 of Article VI of the Act prohibits loans from a manufacturer or distributor to a retail licensee, it contains no provision prohibiting a loan from a manufacturer to a distributor. In Illinois the legal concept of a "loan of credit" has been limited to tripartite transactions in the nature of suretyship. Hagler v. Small, 307 Ill. 460, 468 (1923). This seems to be the prevailing view in other jurisdictions. See Day v. Cohen, 165 Mass. 304, 43 N. E. 109 (1896); Master Charge v. Daugherty, 123 Cal.App.2d 700, 267 P.2d 821 (1954). Nevertheless, the recognition by these courts that credit may be the subject matter of a loan lends credence to the defendant's argument that plaintiff did in effect loan its credit to defendant in return for special services. It will be necessary to determine whether the proffered amendments to defendant's answer, if allowed to stand, inject into this case the question of a "loan of credit," if so, whether a "loan of credit" comes within the restriction on credit of section 4 of Article VI of the Liquor Control Act.

 After plaintiff had filed its motion for judgment on the pleadings, defendant petitioned for a change of venue. A number of motions had previously been presented and argued before the court. In the course of these proceedings, defendant was able to ascertain the court's attitude toward its defenses. For this reason its petition for a change of venue came too late. People v. Chambers, 9 Ill.2d 83, 89 (1956).

On the basis of our analysis of the issues presented, the judgment is reversed and the cause remanded for

further proceedings not inconsistent with the views herein expressed.

Judgment reversed and cause remanded with directions.

SCHWARTZ, P. J. and McCORMICK, J., concur.