Burke, J.
 

 This case involves the scope and applicability of the Statute of Limitations found in section 118 of the Alcoholic Beverage Control Law. That provision reads as follows:
 

 “
 
 Any license or permit issued pursuant to this chapter may be revoked, cancelled or suspended for cause, and must be revoked for the following causes:
 

 “ 1.
 
 Conviction of the licensee, permittee or his
 
 agent or
 
 employee for selling any illegal alcoholic beverages on the premises licensed.
 

 ‘ ‘ 2. For transferring, assigning or hypothecating a license or permit.
 

 “
 
 Notwithstanding the issuance of a license or permit by way of renewal, the liquor authority may revoke, cancel or suspend such license or permit, as prescribed by this section and section one hundred nineteen of this chapter,
 
 for causes or violations
 
 
 *181
 

 occurring during the license period immediately preceding the issuance of such license or permit,
 
 and may recover, as provided in section one hundred twelve of this chapter, the penal sum of the bond on file during said period.” (Emphasis added.) The time limitation question first arose in
 
 Matter of Colonial Liq. Distrs.
 
 v.
 
 O’Connell
 
 (295 N. Y. 129 [1946]) where it was contended that the State Liquor Authority did not possess the power to institute disciplinary proceedings for violations of the Alcoholic Beverage Control Law which had occurred prior to the current license period. This court ruled that the statute as it read at the commencement of the disciplinary proceedings under review contained no limitation at all, i.e., it authorized revocation of a license for 1 ‘ violation of any provision of the Alcoholic Beverage Control Law ”, and consequently there was no stipulated time period within which the Authority had to institute its disciplinary proceedings. While the case was pending, section 118 was amended by the Legislature to read as quoted above, producing a dual effect. On the one hand, it clearly empowered the Authority to discipline a licensee for violations committed during the immediately preceding license period. On the other hand, it limited the disciplinary power of the Authority by
 
 restricting
 
 the punishable violations to those which had occurred in the immediately preceding license period. Such was the effect of our decision in
 
 Matter of Benjamin
 
 v.
 
 State Liq. Auth.
 
 (13 N Y 2d 227 [1963]) where we stated, per Foster, J.: “ We do not ascribe to the theory that the Legislature would pass an act apparently meaningless, and hence we are constrained to the belief that section 118, as amended, should be construed as a statute of limitation on the power of the Authority [the time limitation being the immediately preceding license period]. There is a perfectly rational basis for the action of the Legislature in limiting the power of the Authority to deal with past offenses. Without fixing a point of no return in this respect, it would always be questionable as to how far back the Authority could go in quest of violations ’ ’ (p. 232).
 

 We are now called upon to decide whether this limitation provision is applicable to a fraudulent misrepresentation made in a licensee’s original application for a liquor license (which has been granted and later renewed), whether under certain cir
 
 *182
 
 cumstances the statute may be tolled, and whether, because of a subsequent renewal, the errant licensee can invoke the doctrine of equitable estoppel against the Authority even when the violations did concededly occur in the immediately preceding license period.
 

 Alexander Hacker was first issued a restaurant liquor license on November 1, 1961, which license was renewed for a normal license period of one year on March 1, 1962. On September 4, 1962, the Authority instituted a proceeding pursuant to sections 118 and 119 to revoke, cancel or suspend this license on the charges that Hacker had violated section 111 by allowing one Irving Hacker, his son and convicted felon, to avail himself of the license, that he falsely represented in his original application that he would terminate and forego all outside employment, and that he failed to keep adequate books and records. On March 1, 1963, Alexander Hacker’s liquor license was renewed by the Authority. On December 10, 1963, after considering the summary and findings of the hearing officer submitted on November 1, 1963, the Authority adopted these findings (sustaining charges one and two) and ordered cancellation of Hacker’s license.
 

 The licensee sought review of this determination and, after his article 78 proceeding was removed from the Supreme Court, Kings County, to the Appellate Division, Second Department, he succeeded in having the determination annulled.
 
 (Matter of Hacker
 
 v.
 
 State Liq. Auth.,
 
 21 A D 2d 755 [2d Dept., 1964].)
 

 Considering first the charge against Hacker that he falsely represented in connection with his original application for a liquor license that he would, if his application was approved, leave his outside employment (air conditioner salesman) and take full-time active part in the licensed business, we conclude, as did the Appellate Division, that such a “ fraud ” perpetrated upon the Authority is subject to the one-year time limitation contained in section 118 and that consequently any disciplinary action commenced by the Authority after such time period has elapsed would be time-barred.
 

 However, administrative inquiries, including those of the State Liquor Authority, have been endowed with many of the attributes of a legal proceeding, including notices of hearings,
 
 *183
 
 adjournments, amendment of charges, taking of testimony, availability of transcripts, filing of briefs, etc. (Alcoholic Beverage Control Law, § 119; Rules of State Liq. Auth., rule 2 [9 NYCRR Part 54].) (See
 
 Matter of Sorrentino
 
 v.
 
 State Liq. Auth.,
 
 10 N Y 2d 143, 148-149 [1961].) In
 
 Sorrentino
 
 we held that the licensee under investigation was entitled, upon request, to a copy of the report of the hearing officer and to an opportunity to comment thereon. In addition to this quasi-legal nature of an administrative proceeding convened to cancel or revoke a liquor license, one must consider the period of time which perforce elapses during such an inquiry, from the very first suspicion of a violation to the ultimate official action taken by the Authority. Quite obviously, such a determination is not made in a matter of days or even weeks. As a result, keeping in mind the legal attributes of such an inquiry and the not necessarily short period of time which must transpire before such a serious sanction as cancellation of a license is ordered, we conclude that the normal attributes of a Statute of Limitations must be applicable to the limitation contained in section 118, e.g., a tolling provision similar to that contained in CPLB 203 (subd. [a]) (applicable to civil actions). (See Code Crim. Pro., § 144.) Certainly in civil cases and in criminal prosecutions, an action is considered timely commenced (the Statute of Limitations is tolled) when the initiation of the proceedings occurs within the period of time limited by law. This same rationale applies to disciplinary proceedings instituted by the State Liquor Authority. It would be unreasonable to state that the entire inquiry, commencing with an investigation of alleged violations, proceeding through hearings and reports, and culminating in a formal disposition by the Authority, must all be concluded within the short period of limitation.
 

 Accordingly, if the Authority institutes (by formal notice of hearing, etc.) a disciplinary proceeding for a violation which occurred in the immediately preceding license period, such administrative action is timely commenced and will not be rendered void merely by the passage of several days or weeks or months into the next license period. Thus the Appellate Division erred in annulling the Authority’s determination that the licensee had perpetrated a fraud in his original applica
 
 *184
 
 tion, which at the time of the commencement of the proceedings against him (September, 1962) had occurred in the immediately preceding license period (November, 1961 to March, 1962).
 

 This reasoning likewise applies to the other and more serious charge against Hacker, viz., the allowing of someone not mentioned in the application or license to avail himself of the license. The proceedings were timely commenced as to this violation.
 

 Moreover, this violation constitutes more than a mere misrepresentation; it is an actual substantive violation of the Alcoholic Beverage Control Law which did not occur solely at the time of the licensee’s application, but rather continued throughout the entire duration of the license (§ 111). To state in an application that one will be the sole proprietor of the licensed premises when indeed such is not true is a misrepresentation (§ 110). On being granted the license, however, to then allow someone else to avail himself of the license, someone who because of his criminal record could not have been granted a license in his own name, this is quite different—a far more serious substantive violation of the statute itself and a recognized danger to the public welfare sought to be protected by law (§§ 111, 126). Such a violation continues as long as that other person avails himself of the license. , If the illegal conduct continued in 1961 and 1962, and even into 1967, without question it “ occurred ” in each of those periods. It is inconceivable that, merely because a violation commenced in 1961, it did not “ occur ” in 1962, for such a theory would thwart the very purpose and scheme which our Legislature has manifested in its concern over the control of the State’s liquor industry.
 

 Consequently, the proceedings were timely as to this underlying ' continuing substantive violation which did in fact exist (or “occur”) in the immediately preceding license period. Since Irving Hacker, licensee’s son, did in fact avail himself of the license in the immediately preceding license period (May, 1962), the cancellation of the license by the Authority in December of 1963 would have been timely, even if the Statute .of Limitations had not been tolled.
 

 A separate and independent reason offered by the Appellate Division in support of its annulment of the Authority’s cancellation was the licensee’s ability to estop the Authority from
 
 *185
 
 sustaining the charges filed against him. In the present case the State neither lured the licensee into falsely stating that he would give up any outside employment if a license was granted him, nor did it entice the licensee into allowing his son, a convicted felon, to avail himself of the license directly contrary to statutory law. (See
 
 Matter of Farley
 
 v.
 
 Miller,
 
 216 N. Y. 449 [1916].) Furthermore, the Authority was not merely aware of the violations (charges); it had already commenced disciplinary proceedings against the licensee within the required time period. The only difficulty here is that the ultimate disposition of the charges against the licensee was not rendered until the following year. This in and of itself does not make out a case for the application of equitable estoppel. (See
 
 Matter of Restaurants & Patisseries Longchamps
 
 v.
 
 O’Connell,
 
 271 App. Div. 684, 687 [1st Dept., 1947]; cf.
 
 Matter of A.E.F.’s, Inc.
 
 v.
 
 McKenzie,
 
 269 App. Div. 316 [1st Dept., 1945].)
 

 According to Williston, “ The fundamental basis' for the estoppel is the justifiableness of the conduct of the party claiming the estoppel.” (3 Williston, Contracts [Rev. ed., 1936], § 692, p. 1998.) Immediately, the licensee is hard pressed to justify any of his conduct—the fraudulent misrepresentations, the allowing of someone not mentioned in the license to avail himself thereof, the fact that this person, the licensee’s son, is a convicted felon, etc. Furthermore, even were the licensee misled by the renewal of the license, he must still show a change of position to his detriment in reliance thereon. The mere fact of applying for a renewal license and obtaining same does not indicate any change of the
 
 status quo
 
 — on the contrary, the
 
 status quo
 
 is retained thereby. Nor is there any indication of reliance upon the renewal to the detriment of the licensee. As a matter of fact, all the benefit of the renewal inured to the licensee, as he was allowed to remain in business pending the final disposition of the charges which, to his full awareness, were at that very time pending against him.
 

 Pursuant to section 118, the Authority is empowered to discipline a licensee “ Notwithstanding the issuance ” of a renewal license, exactly the situation here. The time provision assumes such a renewal, since it allows cancellation for violations committed in the immediately
 
 preceding
 
 license period. In light of
 
 *186
 
 this language, it cannot be implied that knowledge of a violation at the time of renewal estops the Authority from continuing the disciplinary proceedings to their ultimate conclusion.
 

 In accordance with this rationale, there is no burden placed upon the Authority to exact a stipulation from the licensee prior to granting him a renewal license. While such a practice was approved in
 
 Matter of Benjamin
 
 v.
 
 State Liq. Auth. (supra
 
 [the same case which held the amendment of § 118 to be one of limitation]), the court in no way mandated the use of such stipulations.
 

 The order should be reversed, and the determination of the State Liquor Authority confirmed, without costs
 
 (College Point Wine & Liqs.
 
 v.
 
 O’Cornell,
 
 296 N. Y. 752 [1946]).
 

 Chief Judge Ftjld and Judges Van Voorhis, Scileppi, Bergan, Keating and Brbitel concur.
 

 Order reversed, etc.