Park Liquors, Inc., an Illinois Corporation, Plaintiff-Appellant, v. Illinois Liquor Control Commission of the State of Illinois, Defendant-Appellee.

Gen. No. 53,454.

First District, Second Division.

March 24, 1970.

Rehearing denied May 8, 1970.

S. J. Be-Hannesey and Jacob Bloom, of Chicago, for appellant.

William J. Scott, Attorney General of State of Illinois, of Chicago (Francis T. Crowe, Herman Tavins, and A. Zola Groves, Assistant Attorneys General, of counsel), for appellee.

MR. JUSTICE BURKE delivered the opinion of the court.

In a proceeding filed pursuant to the Administrative Review Act, the trial court affirmed an order entered by the Illinois Liquor Control Commission revoking plaintiff's state retail liquor license.

On appeal plaintiff contends that prior action by the Local Liquor Control Commissioner of Schiller Park (Local Commissioner) in suspending plaintiff's local retail liquor license for a period of three weeks, preempted the jurisdiction of the Illinois Liquor Control Commission (State Commission) to act in the matter; that the determination by the Local Commissioner was res judicata as to all questions raised in that proceeding; that the determination by the State Commission was not supported by substantial evidence; and that the Citation and Notice of Hearing filed by the State Commission did not charge plaintiff with the violation of any appropriate section of the Illinois Liquor Control Act.

Park Liquors, Inc., operated a retail tavern business in Schiller Park, Illinois, under the name of Park Liquors. The entire capital stock of the plaintiff was owned by Joseph Lachajczyk and his wife.

Pursuant to a Citation and Notice of Hearing filed against plaintiff by the State Commission, a hearing was conducted on June 18, 1968 on the following charges:

"1) In that the licensee and/or his employee did on April 1, 1968 and April 12, 1968 permit gambling on the licensed premises which is a violation of Section 184, Chapter 43, Illinois Revised Statutes, 1967.

"2) Further, that the licensee and/or his employee did, on April 12, 1968 permit and participate in the possession and distribution of obscene motion picture films containing obscenity."

At the outset of the hearing, plaintiff moved for a dismissal of the proceeding on the grounds that the

charges set out in the Citation and Notice of Hearing had been the subject of a hearing and a determination before the Local Commissioner on June 5, 1968; that the State Commission therefore lacked jurisdiction of the subject matter; and that the Local Commissioner's determination was res judicata as to all matters raised in that earlier proceeding. Entered into evidence at that point in the hearing was a copy of the order entered by the Local Commissioner, finding facts in language which was identical to that of the charges contained in the Citation and Notice of Hearing filed by the State Commission. Plaintiff's motion was denied by the State Commission and evidence was taken in support of the charges contained in the Citation and Notice of Hearing.

Cook County Sheriff's Police Officer Donald Shaw testified that he and his partner, Officer Lundgren, entered the Park Liquors tavern on April 1, 1968, in the course of their official duties. Officer Shaw testified that he was dressed as a construction worker. He and his partner took seats at the bar and engaged one of the patrons seated there in a conversation concerning the possibility of the officers' procuring obscene moving pictures. The patron, whose name the officer stated was "Dick," told the officers to contact a person named "Art Rudelek."

Officer Shaw testified that he thereafter contacted Rudelek by telephone and made arrangements for the purchase of five rolls of obscene moving picture film on April 12th. The two officers met with Rudelek on April 12th at the Park Liquors tavern, at which time they were introduced by Rudelek to two bartenders employed by Park Liquors, John Boronski and Ronald Phillip.

Officer Shaw testified that he gave Rudelek $75, in return for which he received a brown paper bag containing five rolls of moving picture film from bartender

441

Phillip. The officer testified that after he paid Rudelek the money, he observed Phillip remove the bag containing the films from a cabinet under a bar where the liquor supply was stored, which was positioned behind the bar at which the patrons were served, and that Phillip physically delivered the bag to the officer.

Officer Shaw further testified that he, Officer Lundgren and Rudelek then went to the men's washroom where they viewed a portion of the films by stripping the film from the roll and holding it against the light in the washroom. The officer testified that he and his partner "were satisfied with the purchase" and returned to their seats at the bar.

The officer testified that after the purchase was completed, Rudelek stated to him that if he or his partner desired any film in the future, they should leave the money therefor at the bar with either of the two bartenders and the film would be waiting for them in two days at the bar. The officer identified the five rolls of film which he and Officer Lundgren purchased on April 12th, which were subsequently admitted into evidence and portions thereof viewed by the members of the Commission.

Prior to the arrest of Rudelek and the two bartenders, the officers purchased raffle chances from a punchboard located behind the bar. Money for the chances was paid by the officers to bartender Phillip. The stub from the chances purchased was entered into evidence at the hearing.

On cross-examination Officer Shaw testified that he assumed the name of "O'Shay" during the transaction and that he entered the Park Liquors tavern dressed as a construction worker for the purpose of a disguise. He also testified that Dick, the patron at the tavern who told him to contact Rudelek about the films, was not a Park Liquors employee, nor was Rudelek employed by Park Liquors. The officer stated that when he tele-

phoned Rudelek he did not tell Rudelek to leave the films at the tavern, but that an arrangement was made that if Rudelek was not at the tavern when Shaw called for the films, he was to ask the bartender for the package. The officer finally testified that he did not "use Park Liquors as a channel for my plan," but that "if there was evidence to be had against Park Liquors, it was my job to gather it."

Officer Lundgren identified both the films and the raffle evidence obtained by the officers from the bartenders on the Park Liquors premises on April 12, 1968.

Joseph Lachajczyk testified that he and his wife owned all the capital stock of Park Liquors, Inc., and that he was in sole authority in the management, the employment and discharge practices, and the conduct of the business. He stated that bartender Boronski was discharged from the employ of Park Liquors immediately after his arrest in this regard.

The witness further testified that he was not aware that the films were sold to the officers, nor did he have any notion that Park Liquors was being used as a "channel" for the sale of the films. The witness did admit, however, that he was aware of the raffle chances being sold in the tavern.

The State Commission ordered a revocation of the plaintiff's state retail liquor license, and plaintiff instituted this proceeding in the circuit court to review that order. The court affirmed the order of the State Commission, and the plaintiff appeals.

The contention raised by the plaintiff, that the State Commission was without jurisdiction to try the questions presented in the Citation and Notice of Hearing for the reason that the Local Commissioner had previously exercised jurisdiction in that regard, presents a novel question. No authority has been cited, or found, regarding the question of whether the exercise of ju-

risdiction by a local commissioner, in suspending a local liquor license preempts the exercise of jurisdiction by the State Commission to determine if the state liquor license should be suspended or revoked, based upon charges identical to those tried by the local commissioner.

■ After a review of the appropriate sections of the Liquor Control Act, we are of the opinion that action taken by a local commissioner in suspending a local liquor license issued by it does not preempt the exercise of jurisdiction by the State Commission to determine whether the license issued by the State Commission should be revoked or suspended, based upon the same charges as tried by the local commissioner, in conformity with the pertinent provisions of the Liquor Control Act. (See Ill Rev Stats 1967, c 43, pars 108(1), 150.)

Plaintiff concedes that the Liquor Control Act created a dual retail liquor licensing system in Illinois whereby both the Illinois Liquor Control Commission and the various local liquor control commissioners have power to issue, respectively, state and local retail liquor licenses. See Ill Rev Stats 1967, c 43, pars 108, 112. It is also conceded by plaintiff that the State Commission has authority and power to suspend or revoke any state liquor license issued by it, including retail liquor licenses, by virtue of amendments to the Liquor Control Act in 1955. Ill Rev Stats 1967, c 43, pars 108(1), 150; Pliakos v. Illinois Liquor Control Commission, 12 Ill App 2d 170, 138 NE2d 862, affd, 11 Ill2d 456, 143 NE2d 47.

■ Section 13 of Article III of the Act provides that the issuance of a local retail liquor license by a local commissioner entitles the licensee to the issuance of a state license from the State Commission, subject only to the right of the State Commission to refuse such issuance where a violation of the Illinois Retailers' Occupation Tax is involved. Ill Rev Stats 1967, c 43, par

109. If such question does not arise, the State Commission must, without a second hearing as to the applicant's character, fitness, etc., issue a state license. Ill Rev Stats 1967, c 43, par 109; Retail Liquor Dealers' Protective Ass'n of Chicago v. Fleck, 408 Ill 219, 96 NE2d 556. Section 13 further provides that although the state license has been issued as above stated, the compulsory issuance of such license "shall not prejudice the State Commission's action in subsequently suspending or revoking" the state license, in accordance with the procedures set out in the Act. It is clear that the legislature did not intend that the indirect control by a local commissioner over the issuance of state licenses should extend to the power of the State Commission to revoke or suspend the state license on grounds prescribed in the Act.

Section 3 of Article IV of the Act empowers a local commissioner to revoke for cause, or to suspend for not more than 30 days, "all local licenses issued to persons for premises within his jurisdiction." Ill Rev Stats 1967, c 43, par 112. The suspension or revocation of the local license may be ordered by a local commissioner where, after notice and hearing, he determines that the licensee has violated, inter alia, "any of the provisions of this Act or of any valid ordinance or resolution enacted by the particular city council, . . . ." Ill Rev Stats 1967, c 43, par 149.

Section 12 of Article III of the Act provides that the State Commission has the power to "suspend or revoke such [state] licenses upon the State commission's determination . . . that a licensee has violated any provision of this Act or any rule or regulation issued pursuant thereto. . . ." Ill Rev Stats 1967, c 43, par 108(1). It should be noted that the State Commission's power to suspend or revoke does not extend to a violation of a purely local ordinance or regulation by a state licensee, but that its authority to suspend a state license

is not limited to a 30-day maximum period as is the power of a local commissioner.

The only provision in the Act which relates to the power of a local commissioner to control the status of a state license, is contained in Section 6 of Article VII of the Act: "The revocation of a local license shall automatically result in the revocation of a State license." Ill Rev Stats 1967, c 43, par 150. The clear reason behind this provision is that since a party may not conduct a retail liquor business in Illinois without first having secured both a local and a state retail liquor license, and since the Act provides that a party whose license has been revoked for cause shall not be issued another license, the existence of the state license without the existence of the local license is meaningless. See Ill Rev Stats 1967, c 43, par 120 (7). However, no such provision is made in the Act as to the effect of a suspension of the local license upon the status of the state license.

■ The legislature has provided a dual retail licensing system in Illinois, and in 1955 it further provided a dual system of sanctions for violations as provided in the Liquor Control Act. Prior to 1955, the State Commission had no power to impose sanctions for violations by way of revocation or suspension of licenses issued by it. It has long been held that the State has a definite interest in the sale, manufacture and distribution of alcoholic liquors within its borders. Pliakos v. Illinois Liquor Control Commission, 12 Ill App 2d 170, 138 NE2d 862, affd, 11 Ill2d 456, 143 NE2d 47. The State's power to regulate such matters cannot be set aside by implication alone. We are of the opinion that the legislature did not intend that action by a local commissioner suspending a local retail liquor license should preempt the exercise of jurisdiction by the State Commission to revoke or suspend the state license based

upon the same violations of the Act or appropriate rule or regulation.

As heretofore noted, the cases cited by plaintiff in support of its position are not in point. Retail Liquor Dealers' Protective Ass'n of Chicago v. Fleck, 408 Ill 219, 96 NE2d 556, deals with the question of whether the State Commission, on an appeal to it from a determination by a local commissioner, may hold additional hearings as to the applicant's character, fitness, etc., for the issuance of a liquor license. Day v. Illinois Liquor Commission, 39 Ill App2d 281, 188 NE2d 883, deals with the scope and extent of authority allowed to the State Commission in reviewing a determination made by a local commissioner.

■ Plaintiff's second point is that the action taken by the State Commission was barred under the principle of res judicata. Plaintiff argues that although two liquor licenses were issued to it, by the State Commission and by the Local Commissioner, the issuance of both licenses afforded only a single privilege to engage in the retail liquor business, and that therefore, the action taken by the Local Commissioner suspending that privilege for three weeks was res judicata as to any subsequent proceeding on the same subject matter. We disagree.

■ Plaintiff was issued two separate and distinct retail liquor licenses by two separate and distinct licensing bodies, in accordance with the terms of the Liquor Control Act. By amending the Act in 1955 to provide for the imposition of sanctions by both bodies, for violations by the licensee, by means of suspension or revocation of the respective licenses, the legislature evidenced its intention that the regulation of the retail liquor business was the concern of both the local and the State bodies. While the Act does provide for the revocation or suspension of either license by the ap-

447

propriate body, for the violation of any of the applicable provisions of the Act or of any rule or regulation set down by the State Commission, only a local commissioner is empowered to impose such sanctions for the violation of a purely local ordinance or regulation. (See Weinstein v. Daley, 85 Ill App2d 470, 229 NE2d 357.) To hold that a determination by a local commissioner, in connection with a license issued by it, bars action by the other, independent State body in connection with a license previously issued by it, albeit the same violation forms the basis of both proceedings, would defeat the intention manifested in the Liquor Control Act that the regulation of the retail liquor industry is the concern of both the local and the State bodies. The power of the State to act in this regard is not so limited. Pliakos v. Illinois Liquor Control Commission, 12 Ill App2d 170, 138 NE2d 862, affd, 11 Ill2d 456, 143 NE2d 47.

The cases cited by plaintiff in this regard are not in point. Cermak Club, Inc. v. Illinois Liquor Control Commission, 30 Ill2d 90, 195 NE2d 178, stands solely for the proposition that the State Commission is a "quasi-judicial" body when it acts to revoke licenses issued by it. In Childers v. Illinois Liquor Control Commission, 67 Ill App2d 107, 213 NE2d 595, plaintiff had been found guilty of certain violations by a local commissioner who imposed sanctions therefor; those same violations were later employed by the same local commissioner to again discipline the plaintiff when the evidence failed to support the charges filed in the later proceeding.

Bentley v. Teton, 19 Ill App2d 284, 153 NE2d 495, was a case dealing with estoppel rather than the question of res judicata. The reviewing court held that although the defendant in the subsequent suit was not a party to the prior suit (which had been brought by the plaintiff wherein plaintiff raised the same questions as raised in the subsequent suit), the defendant in the subsequent

suit could properly raise a defense of estoppel in the subsequent suit because of the special relationship existing between the plaintiff and the defendant in the subsequent action, on the one hand, and also between those two parties and the defendant in the prior action, on the other hand. No such conditions exist here.

People v. Gray, 101 Ill App2d 217, 242 NE2d 298, involved an attempt by a local commissioner to obtain a conviction for defendant's failure to obtain a local license to conduct a liquor business on a pleasure boat. The court on review held that under the evidence presented, such type of liquor licensing was a matter solely within the jurisdiction of the State Commission, by the express provisions of the Liquor Control Act.

Plaintiff next contends that the determination by the State Commission was not supported by substantial evidence.

Officer Donald Shaw testified that he was directed by a patron at Park Liquors to contact Art Rudelek concerning the purchase of obscene moving picture films. Over the telephone the officer arranged with Rudelek for the purchase of five rolls of film; an arrangement was also made that if Rudelek was not at Park Liquors when the officer called for the films, the officer was to ask the bartender for the films. The officer met with Rudelek at the tavern, and Rudelek thereupon introduced him to bartenders Boronski and Phillip. The officer testified that he gave Rudelek $75 and then observed bartender Phillip take a brown paper bag from a liquor stock bar behind the patrons' service bar; the bag, containing the films, was then delivered by Phillip to the officer. Shaw also testified that after the purchase had been completed and after the officer had summarily viewed the films in the washroom, Rudelek informed him that if he desired any more film in the future he should leave the money with one of the bartenders at the tavern and the films could be picked up

449

at the tavern two days later. One of the films purchased by the officer was viewed by the members of the Commission at the hearing.

Officer Shaw further testified that he also purchased a raffle chance from a punchboard which was located on the bar and that he paid bartender Phillip therefor.

■ We are of the opinion that the finding of the State Commission, that "the evidence adduced at the hearing supported the charges contained in the Citation and Notice of Hearing," was not against the manifest weight of the evidence. Mitchell v. Sackett, 27 Ill App2d 335, 169 NE2d 833. Plaintiff's bartenders were directly involved in the transfer of the films, as appears from the testimony of Officer Shaw. It is clear that Park Liquors was not used as a "mere conduit" for the exchange of the films, as contended by plaintiff, in light of the testimony of Shaw that Rudelek told him that if he desired any more film in the future merely to leave the money with the bartenders and the film could be picked up in two days.

■ The further fact that Lachajzyck testified that he had no knowledge that the Park Liquors premises was being used as a transfer point for the films is unavailing; there is substantial evidence that the bartenders knowingly engaged in the sale and transfer of the films, and knowledge by the licensee of the unlawful activities of his employees in this regard is not a prerequisite to a finding of a licensee's violation of section 3 of Article X of the Act. Ill Rev Stats 1967, c 43, par 185. It should also be borne in mind that Lachajzyck testified that he fired one of the bartenders immediately after the arrests, and further that Lachajzyck admitted knowing about the sales of the raffle tickets by his bartenders on the Park Liquors premises.

Plaintiff did not contest below the question of whether the films which Officer Shaw purchased from Rudelek

were in fact obscene. Although plaintiff did raise an objection to the admission of the films into evidence, the basis thereof related only to the relevancy of the films in light of plaintiff's theory that plaintiff in no way participated in their sale or delivery through the bartenders.

 The Commission made the single finding of fact, that the "evidence adduced at the hearing supported the charges contained in the Citation and Notice of Hearing." While this single finding does somewhat weaken the weight of the Commission's final determination of plaintiff's guilt (Maywood Park Trotting Ass'n v. Illinois Harness Racing Commission, 15 Ill2d 559, 563, 155 NE2d 626) the evidence in the record substantially supports the finding that plaintiff did in fact engage in the traffic of obscene materials and in the sale of gambling material through its employees in violation of section 3 of Article X of the Act. Ill Rev Stats 1967, c 43, par 185.

The final contention raised by plaintiff is that the Citation and Notice of Hearing filed by the State Commission failed to charge plaintiff with a violation of an appropriate section of the Liquor Control Act. The Citation and Notice of Hearing charged plaintiff with a violation of section 2 of Article X of the Act, which deals with owners of licensed premises, whereas plaintiff was found guilty of a violation of section 3 of Article X, which deals with licensees. (Ill Rev Stats 1967, c 43, pars 184, 185.) We are of the opinion that plaintiff cannot at this time be heard to complain in this regard, inasmuch as plaintiff was aware that the charges against it were brought under section 3 of Article X of the Act.

 By its own admission in its complaint to review the State Commission's ruling, plaintiff alleged as one of the grounds for a reversal of that ruling, that

the Commission made, "An incorrect application of the language of Article 10, Section 3 of the Illinois Liquor Control Act," which is paragraph 185 of the Ill Rev Stats. It is clear that there was a typographical error in the Citation and Notice of Hearing, and that plaintiff in fact knew the violation charged. The authorities cited by plaintiff with respect to the question of jurisdiction of the Commission to hear the matter are not applicable.

For these reasons the judgment is affirmed.

Judgment affirmed.

McCORMICK, P. J. and LYONS, J., concur.