Argued' August 23, reversed in part; remanded in part October 8, petition for rehearing denied November 1, 1973, petition for review denied January 3, 1974

# PALM GARDENS, INC. ET AL, *Petitioners, v.* OREGON LIQUOR CONTROL COMMISSION, *Respondent.*

514 P2d 888

*John R. Sidman,* Portland, argued the cause and filed the briefs for petitioners.

*John W. Burgess,* Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief were Lee Johnson, Attorney General, and John W. Osburn, Solicitor General, Salem.

Before LANGTRY, Presiding Judge, and FORT and THORNTON, Judges.

LANGTRY, P.J.

Petitioners appeal from a revocation of the Dispenser Class B license of Palm Gardens, Inc. and the notice of warning issued to the permittee Michael Makin. Palm Gardens, Inc. was issued the Dispenser Class B license on October 18, 1972 as a result of an application filed with the Oregon Liquor Control Com-

mission (referred to as OLCC) on August 18, 1972. The license replaced a previous license issued to Albert Parker, doing business as Palm Gardens; Mr. Parker is listed as the sole stockholder of Palm Gardens, Inc. on the application for the license.

The events forming the basis for this revocation occurred on October 10, 1972. On the evening of that date, two undercover inspectors for the OLCC observed a dancer, wearing only "pasties" and G-string, on the petitioners' stage approach at the edge of the stage bar a male patron who had placed a piece of folded paper between his teeth. The dancer pulled down her G-string with her thumbs, placed her crotch in the patron's face, and, with her hips gyrating, removed the folded paper from his mouth. This "performance" was repeated several times during the course of the inspection. A notice of violation was served on both petitioners as a consequence of this inspection.

The dancers engaged in this "performance" were hired from an independent booking agent by the petitioners, but the petitioners had control of their activities on the stage at all times.

The record also indicates that on two occasions during the three weeks prior to October 10, 1972 inspectors for the OLCC had contacted the petitioners about improper bodily contact between the dancers and the customers.

Based on its findings of fact and on the record presented to it, the OLCC made the following conclusions of law and ruling:

### "CONCLUSIONS OF LAW

"Licensee Palm Gardens, Inc., through its employee, for whose acts it is held responsible pur-

suant to OAR Chapter 845 10-075, maintained a lewd or disorderly establishment and permitted or suffered disorderly conduct upon the licensed premises, in violation of ORS 472.180 (5) and OAR Chapter 845 10-065 (2).

"Permittee Michael Makin, maintained a lewd or disorderly establishment and permitted or suffered disorderly conduct upon the licensed premises, in violation of ORS 472.180 (5) and OAR Chapter 845 10-065 (2).

"Wherefore, it is considered and ordered:

"That the Dispenser Class B license of Palm Gardens, Inc., be cancelled for violation of ORS 472.180 (5) and OAR Chapter 845 10-065 (2), further;

"That a warning be issued Permittee Michael Makin for violation of ORS 472.180 (5) and OAR Chapter 845 10-065 (2); * * *

"* * * * * *"

■ Our review of the order of the OLCC is governed by ORS 183.480 (7)(d) which states:

"(7) The court may affirm, reverse or remand the order. The court shall reverse or remand the order only if it finds:

"(d) On review of a contested case, the order is not supported by reliable, probative and substantial evidence on the whole record;

"* * * * * *"

The statutes and regulations under which responsibility was founded and violations charged are as follows:

Oregon Administrative Rules ch 845, § 10-075 (OAR 845-10-075):

"Each licensee shall be held responsible for any violation of any regulation of the Commission pertaining to his licensed premises and for any act or

omission of any servant, agent, employee, or representative of such licensee in violation of any law, municipal ordinance or regulation affecting his license privileges."

ORS 472.180 (5):

"The commission may cancel or suspend any license granted if it finds:

"(5) That the licensee maintains a noisy, lewd, disorderly or insanitary establishment or has been supplying impure or otherwise deleterious beverages or food."

OAR 845-10-065 (2):

"No licensee shall permit or suffer any loud, noisy, disorderly or boisterous conduct, or any profane or abusive language, in or upon his licensed premises, or permit any visibly intoxicated person to enter or remain upon his licensed premises."

Under the substantial evidence rule, we may decide questions of law, but must limit ourselves to the test of reasonableness in reviewing findings of fact. 4 Davis, Administrative Law Treatise 114, § 29.01 (1958); ORS 183.480 (7). *See Bay v. State Board of Education,* 233 Or 601, 605, 378 P2d 558, 96 ALR2d 529 (1963).

The petitioners raise nine assignments of error which will be considered in order.

■ ■ . (1). IS PALM GARDENS, INC. RESPONSIBLE FOR VIOLATIONS OCCURRING PRIOR TO THE ISSUANCE OF ITS LICENSE?

The basic argument of the petitioners here is that there is insufficient evidence to disregard the corporate entity and to make the corporation liable. It is true, as the petitioners contend, that the mere ownership of all the stock of the corporation, or man-

agement control, by Mr. Parker is not sufficient to justify disregard of the corporate entity. *Wakeman v. Paulson,* 257 Or 542, 544, 547, 480 P.2d 434 (1971). However, if the legal entity is being used to defeat public convenience, justify wrong, protect fraud or defend crime, "courts will disregard the corporation or its entity and look at the substance and reality of the matter." 1 Fletcher, Cyclopedia of Private Corporations 240-42, § 45 (rev 1963). *Wakeman v. Paulson,* supra, 257 Or at 544. Looking at the substance and reality of the matters here, it becomes quite clear that to permit Palm Gardens, Inc. to be held blameless for the acts of Albert Parker, dba Palm Gardens, would be to permit the petitioners to evade the authority of the OLCC under the statute. Palm Gardens, Inc. was clearly designed to be a successor to the business operated in an unincorporated form by Albert Parker and the application for a license filed by Palm Gardens, Inc. so indicates.

(2). WERE THE DANCERS EMPLOYES, OFFICERS, AGENTS OR REPRESENTATIVES OF PALM GARDENS, INC.?

The test for determining whether a person is a servant or an independent contractor is based not on the actual exercise of control by the employer, but on the right to control. Where the employer has no right to control the other's actions, the actor is usually deemed to be an independent contractor. But the test of the right to control does not refer to the right to control the results of the work, but rather to the right to control the manner and means of accomplishing the result. *Great American Ins. v. General Ins.,* 257 Or 62, 66-7, 475 P2d 415 (1970).

The evidence indicates that Mr. Parker told the

dancers the "rules" and, if they did not follow these rules, they would either be corrected or removed from the stage. Further, nothing in the evidence indicates that Mr. Parker was in anything but complete control of the operation of the establishment and the manner of performance by the dancers. This is sufficient to establish a right to control. The manner of obtaining the services of dancers or other personnel employed here did not erase petitioners' responsibility for the operation of the facility. *Freud v. Davis,* 64 NJ Super 242, 165 A2d 850 (1960); *Jacques, Inc. v. State Bd. of Equalization,* 155 Cal App 2d 448, 318 P2d 6 (1957).

(3). IS THE WORD "LEWD" AS IT APPEARS IN ORS 472.180 (5) UNCONSTITUTIONALLY VAGUE?

■ The Oregon approach to vagueness in statutes was stated in *State v. Hodges,* 254 Or 21, 27, 457 P2d 491 (1969), wherein the court stated:

> "A law that is too vague for reasonable adjudication is bad on two grounds. A vague statute lends itself to an unconstitutional delegation of legislative power to the judge and jury, and, by permitting the jury to decide what the law will be, it offends the principle, if not the rule, against *ex post facto* laws * * *."

This principle applies alike to license revocation cases, *Board of Medical Examiners v. Mintz,* 233 Or 441, 378 P2d 945 (1963), and *Ward v. Ore. State Bd. of Nursing,* 11 Or App 353, 502 P2d 265 (1972), *reversed on other grounds,* 266 Or 128, 510 P2d 554 (1973).

However, the statute need not set out in precise terms every possible violation:

> "* * * It may be advisable for the legislature or the administrative agency to set out specific

adjudicatory standards in some instances. But this does not mean that a statute must always set out the precise instances under which it is to be operative. No matter how specific the standard or standards are stated, there is almost always a penumbra which requires the administrative agency to exercise a judgment as to whether the facts before it fall within or outside the legislative design * * *." 233 Or at 447.

This court has previously considered the question of the meaning of the term "lewd" in a penal statute and we found that it was not unconstitutionally vague. *State v. Stich,* 5 Or App 511, 484 P2d 861, Sup Ct *review denied* (1971). We noted in affirming a conviction for lewdly fondling and manipulating the private parts of a child (former ORS 167.227):

> "Defendant claims that the word 'lewd' is generally coupled with other terms to give it meaning. This is so in ORS 167.227, for the word is coupled with 'fondles and manipulates the private parts' of the child victim. Any person not married to the victim, other than parents or medical persons discharging their duties, who fondles or manipulates the private parts of a child of tender years is doing something *which any mature person of common understanding knows is vile, lustful and indecent.* This fulfils the Webster's New International Dictionary (3d ed 1969) definition of what is lewd * * *." (Emphasis supplied.) 5 Or App at 514-15.

Likewise, courts in other jurisdictions have found that the word "lewd" is not unconstitutionally vague. A typical approach is that of the Idaho Supreme Court in *State v. Evans,* 73 Idaho 50, 56, 245 P2d 788 (1952):

> "Respondent contends that the words 'lewd' and 'lascivious' are of such general import and cover such a wide range of action as to render the statute uncertain. * * * Lewd is defined to mean licen-

tious, lecherous, dissolute, sensual, debauched, impure, obscene, salacious, pornographic. Websters New International Dictionary, 2d Ed., Unabridged. Lewd and lascivious are words in common use and the definitions indicate with reasonable certainty the kind and character of acts and conduct which the legislature intended to prohibit and punish, so that a person of ordinary understanding may know what conduct on his part is condemned * * *.''

*Accord, Lovelace v. Clark,* 83 Ariz 27, 315 P2d 876 (1957); *Chesebrough v. State,* 255 So 2d 675 (Fla 1971); *State v. Shannon,* 95 Idaho 299, 507 P2d 808 (1973).

The United States Supreme Court has also indicated that the word "lewd" is not vague when used in a statute. For example, in *Winters v. New York,* 333 US 507, 518, 68 S Ct 665, 92 L Ed 840 (1948), the court noted:

"The impossibility of defining the precise line between *permissible* uncertainty in statutes caused by describing crimes by *words well understood through long use in the criminal law*—obscene, *lewd,* lascivious, filthy, indecent or disgusting—and the unconstitutional vagueness that leaves a person uncertain as to the kind of prohibited conduct * * * has resulted in three arguments of this case in this Court * * *.'' (Emphasis supplied.)

*See also, Swearingen v. United States,* 161 US 446, 450, 16 S Ct 562, 40 L Ed 765 (1896). *Cf. Roth v. United States,* 354 US 476, 491, 77 S Ct 1304, 1 L Ed 2d 1498 (1957).

■ Particular acts and forms of lewdness constituted criminal offenses at common law and the word "lewdness" was defined to mean open and public indecency. 50 Am Jur 2d 450, 451, Lewdness, Indecency, and Obscenity § 1. Although this case does not involve

a criminal offense and Oregon does not have common law crimes, where the name of an offense known to the common law is referred to in a statute, the statute may be construed in light of the common law definition of the offense so named. *Lilly v. Gladden,* 220 Or 84, 100, 348 P2d 1 (1959).

■ We are aware that there are some cases which find that "lewd" is unconstitutionally vague. *Miami Health Studios, Inc. v. City of Miami Beach,* 353 F Supp 593 (SD Fla 1972). *Cf. Donnenberg, et al. v. State,* 1 Md App 591, 232 A2d 264 (1967). However, our review of the law in this area convinces us that, through its long use in the criminal law, the term indicates with sufficient specificity the proscribed conduct so that men of ordinary understanding can govern their activities, and, consequently it is not unconstitutionally vague.

■ (4). DID THE PETITIONERS MAINTAIN A LEWD ESTABLISHMENT AS FOUND BY THE OLCC?

In *Starview, Inc. v. OLCC,* — Or App —, 514 P2d 898 (1973), we have held that there must be evidence of more than an isolated violation standing alone to prove that a licensee "maintains" a lewd or disorderly establishment.

On the facts found, recited supra, which were supported by substantial evidence, the OLCC conclusion that Palm Gardens, Inc. "maintained" a "lewd" place is affirmed. The record contains evidence that within the three weeks prior to the October 10 violation the inspector "talked to" Parker and his manager twice about prohibited "bodily contact" between dancers and customers. Parker admitted one such "talk." The evidence thus shows requisite continuity.

■ (5). DOES ORS 472.180 (5) VIOLATE PETITIONERS' RIGHT TO FREE EXPRESSION UNDER THE FIRST AND FOURTEENTH AMENDMENTS?

This point is adequately met in *California v. LaRue*, 409 US 109, 118-19, 93 S Ct 390, 34 L Ed 2d 342 (1972), wherein the court stated:

"* * * While we agree that at least some of the performances to which these regulations [of the California Department of Alcoholic Beverage Control] address themselves are *within* the limits of the constitutional protection of freedom of expression, the critical fact is that California has not forbidden these performances across the board. It has merely proscribed such performances in establishments which it licenses to sell liquor by the drink.

"* * * * *

"The Department's conclusions, embodied in these regulations, that certain sexual performances and the dispensation of liquor by the drink ought not to occur at premises that have licenses was not an irrational one. Given the added presumption in favor of the validity of the state regulation in this area which the Twenty-first Amendment requires, we cannot hold that the regulations on their face violate the Federal Constitution." (Emphasis supplied.)

■ (6). DO THE RESPONSIBILITY PROVISIONS OF OAR 845-10-075 DENY THE PETITIONERS DUE PROCESS OF LAW?

*Perry v. Oregon Liquor Commission,* 180 Or 495, 500, 177 P2d 406 (1947), details the Oregon law on the regulation of the OLCC in question:

"* * * Regulation M of the Commission [a predecessor of the current regulation] making the

licensee responsible for the 'act or omission of any servant, agent, employee or representative' is undoubtedly reasonable and tends toward a more efficient administration of the [Liquor Control] Act. It was unlawful for the 'barkeeper' to sell whiskey. It is wholly immaterial whether the licensee knew about such sale or whether it was contrary to her instructions * * *.

"When the licensee accepted the license, she impliedly agreed to obey the provisions of the Liquor Control Act and all reasonable regulations of the Commission made pursuant thereto * * *. It was incumbent upon the licensee to conduct this night club in a lawful manner, whether it was operated by her personally or through her agents or employees. If the rule were otherwise, the Commission would have slight control over the sale and consumption of intoxicating liquor."

Petitioners contend that this portion of *Perry* establishes an unconstitutional rule of law in light of *Bell v. Burson,* 402 US 535, 91 S Ct 1586, 29 L Ed 2d 90 (1971), wherein the Supreme Court stated that the Due Process Clause required a prior hearing before a license could be revoked. The effect of *Bell* is to overrule another portion of the *Perry* decision which states a license is a mere privilege that can be removed virtually at will (180 Or at 500), but that holding does not change the controlling portions of *Perry,* quoted above, which control the question here. Decisions by some courts do not permit a license to be revoked in the absence of knowledge of violations by the licensee (e.g., *In the Matter of Stevensville Lake Holding Corp. v. O'Connell,* 269 App Div 804, 55 NYS2d 638 (1945)); however, most courts do allow such a revocation if permitted, as here, by the applicable statute. *See Park Liquors v. Illinois Liquor Control Comm.,* 122 Ill App 2d 437, 259 NE2d 331 (1970), and *Davis v. Missouri*

*Real Estate Commission,* 211 SW2d 737 (Mo. Ct App 1948).

■ (7). IS AN ADMINISTRATIVE HEARING WHEREIN THE TRIBUNAL COMBINES PROSECUTING AND JUDICIAL FUNCTIONS LACKING IN DUE PROCESS OF LAW?

The law in this area has been aptly stated in 2 Davis, Administrative Law Treatise 175, § 13.02 (1958):

> "The case law, both federal and state, generally rejects the idea that the combination with judging of prosecuting or investigating functions is a denial of due process, although a few exceptions can be found."

Similarly, it is stated in 1 Cooper, State Administrative Law 339 (1965):

> "* * * [T]he combination of prosecutory and adjudicatory functions in a single agency is not considered to be a violation of due process guarantees. However, a court may find a deprival of procedural due process if the circumstances of a particular case indicate that an excess of prosecutory zeal made it impossible for an agency to act impartially in judging the case it was prosecuting."

*Cf. Whitney v. Morgan,* 9 Or App 289, 291, 497 P2d 865 (1972). There is no evidence or allegation that the OLCC in any way impartially or unfairly judged this case. Rather, the argument rests on bare due process grounds.

The cases cited by petitioners do not aid their claim. *Tumey v. Ohio,* 273 US 510, 47 S Ct 437, 71 L Ed 749, 50 ALR 1243 (1927), found that the pecuniary rewards to the mayor-judge deriving only from a conviction of a defendant violated due process guarantees.

*In Re Murchison,* 349 US 133, 75 S Ct 623, 99 L Ed 942 (1955), and *State ex rel. Beam v. Fulwiler,* 76 Wash 2d 313, 456 P2d 322 (1969), both involved situations where the tribunal or its members sitting on the merits of the case had participated in bringing the original charges against the individual. Other cases cited by petitioners involved similar conflicts of interest. No such allegations have been made here. The OLCC procedure does not on its face violate the Due Process Clause.

(8). IS THE OLCC ESTOPPED TO DENY A LICENSE TO PALM GARDENS, INC.?

█ Under appropriate circumstances, the state of Oregon may be estopped to assert a claim inconsistent with a previous position taken by it. *Belton v. Buesing,* 240 Or 399, 411, 402 P2d 98 (1965). The only Oregon cases applying the doctrine against the state, however, involve tax assessment or tax related situations. *See Pilgrim Turkey Packers v. Dept. of Rev.,* 261 Or 305, 493 P2d 1372 (1972); *Johnson v. Tax Commission,* 248 Or 460, 435 P2d 302 (1967); *Belton v. Buesing,* supra.

█ Assuming, however, that estoppel *could* be applied in this type of case, it should not be applied here. As noted in *Willis v. Stager,* 257 Or 608, 619, 481 P2d 78 (1971):

> "* * * [I]t is well established that there can be no estoppel unless there was not only reliance, but a right of reliance, and that reliance is not justified where a party has knowledge to the contrary of the fact or representation allegedly relied upon * * *."

Here, the petitioners had knowledge of the notice of violation given before the new license was issued. It

is inconceivable that Parker could have relied upon the granting of that license in light of his knowledge of the charged violation.

*Matter of Hacker v. State Liq. Auth.*, 19 NY2d 177, 278 NYS2d 806, 225 NE2d 512 (1967), is pertinent to our inquiry. In *Hacker,* the licensee's license was renewed although the agency had instituted proceedings to revoke his license before the renewal. The licensee claimed that the agency was estopped by its conduct from revoking his license. The court upheld the revocation and said:

> "* * * Nor is there any indication of reliance upon the renewal to the detriment of the licensee. As a matter of fact, all the benefit of the renewal inured to the licensee, as he was allowed to remain in business pending the final disposition of the charges which, to his full awareness, were at that very time pending against him." 19 NY2d at 185.

■ (9). WAS IT AN ABUSE OF DISCRETION TO DENY ISSUANCE OF SUBPENAS FOR A NEWSPAPER REPORTER AND A TELEVISION NEWS REPORTER?

ORS 183.440 (1) states:

> "The agency shall issue subpenas to any party to a contested case upon request on good cause being shown and, to the extent required by agency rule, upon a statement or showing of general relevance and reasonable scope of the evidence sought * * * * "

The persons to be subpenaed here allegedly had some information that would show unspecified forms of prejudice on the part of the OLCC. However, petitioners did not state or offer proof to show that they knew the names of these individuals or what they would

testify to. On the facts as given, we conclude that good cause has not been shown and that the subpenas were properly refused.

One of the conclusions of law of the OLCC was that the petitioners maintained a disorderly place in violation of ORS 472.180 (5) and OAR 845-10-065 (2). We do not think that the evidence supports the finding that the petitioners maintained a disorderly establishment and, consequently, we do not address the constitutional challenges to these portions of the statutes.

The petitioners contend that the definition of "disorderly" must be derived from that given in ORS 166.025.[1] The OLCC, on the other hand, contends that petitioners' reliance on ORS 166.025 is misplaced and urges a common law or case law definition. However, the Liquor Control Laws and Administrative Rules

---

[1] ORS 166.025 states:

"(1) A person commits the crime of disorderly conduct if, with intent to cause public inconvenience, annoyance or alarm, or recklessly creating a risk thereof, he:

"(a) Engages in fighting or in violent, tumultuous or threatening behavior; or

"(b) Makes unreasonable noise; or

"(c) Uses abusive or obscene language, or makes an obscene gesture, in a public place; or

"(d) Disturbs any lawful assembly of persons without lawful authority; or

"(e) Obstructs vehicular or pedestrian traffic on a public way; or

"(f) Congregates with other persons in a public place and refuses to comply with a lawful order of the police to disperse; or

"(g) Initiates or circulates a report, knowing it to be false, concerning an alleged or impending fire, explosion, crime, catastrophe or other emergency; or

"(h) Creates a hazardous or physically offensive condition by any act which he is not licensed or privileged to do.

"(2) Disorderly conduct is a Class B misdemeanor."

(1972), which are given to each licensee, specifically refer to ORS 166.025 for the definition of disorderly conduct (Index 9: "Disorderly Conduct Defined" and Rules at 85). The OLCC cannot now claim that this definition does not apply.

■ Under ORS 166.025, to be guilty of disorderly conduct the actor must act "with intent to cause public inconvenience, annoyance or alarm, or recklessly * * * [create] a risk thereof * * *." There is no evidence that the petitioners or their employes, including the dancers, created public inconvenience, annoyance or alarm, or a risk thereof. Consequently, this portion of the OLCC's order must be reversed.

■ Although a finding of maintaining a lewd establishment is sufficient under ORS 472.180 (5) to support the revocation of Palm Gardens, Inc.'s license and the warning to Michael Makin, we are remanding to the Oregon Liquor Control Commission for a determination whether these sanctions are desired by the Commission in light of our reversal of the finding that petitioners maintained a disorderly establishment and permitted or suffered disorderly conduct upon the premises. This decision does not decide whether, under appropriate circumstances, a finding that maintaining a lewd establishment may also constitute maintaining a disorderly establishment.

Reversed in part; remanded in part.

THORNTON, J., specially concurring.

I concur in the result. I do not, however, agree with that portion of the majority opinion which concludes, in effect, that it was incumbent upon the respondent, Oregon Liquor Control Commission (OLCC), to prove the elements of the crime of disorderly conduct as set

forth in ORS 166.025 in order to find petitioners guilty of maintaining a disorderly establishment in violation of ORS 472.180 (5).

In support of the above conclusion, the majority opinion relies on the contents of a booklet entitled "Liquor Control Laws and Administrative Rules," compiled and distributed by the OLCC to its licensees. The booklet contains a reprint of a large number of Oregon statutes. The first portion includes ORS chs 471 (Alcoholic Liquors Generally), 472 (Sale of Alcoholic Liquor by Individual Drink), 473 (Liquor Manufacturing and Importing Tax), 474 (Uniform Narcotic Drug Act), and 475 (Narcotic and Dangerous Drugs), plus the chapter (ch 845) of the Oregon Administrative Rules pertaining to the administration of the liquor laws. This is followed by a reprint of ORS ch 183 (Administrative Procedures & Rules of State Agencies). The final section of the booklet, captioned "Miscellaneous Provisions," consists of a reprint of some 24 miscellaneous sections of the civil and criminal statutes, including ORS 166.025, the criminal statute pertaining to disorderly conduct.

I do not believe that the action of the commission in reprinting in this booklet a series of civil and criminal statutes, including ORS 166.025, should be interpreted by this court as restricting the commission to that single definition of 'disorderly conduct' in applying ORS 472.180. From my examination of the various code sections included in the "Miscellaneous Provisions" section of the booklet, I would regard this portion of the booklet as simply containing supplementary information for licensees—an effort by the administrative agency to list some additional code sections which might conceivably aid licensees in conducting their businesses according to other laws of this state.

First, ORS 166.025 is not made a part of the administrative rules of the agency. Second, the agency does not designate ORS 166.025 as an administrative interpretation of the term "disorderly" in ORS 472.180. I can find nothing in ORS 472.180 or in the Liquor Control Act generally indicating a legislative intent to impose such a restriction upon the enforcement authority of the OLCC under ORS 472.180.

As the opinion correctly points out in answering a different contention by petitioners, there can be no estoppel against the commission in these circumstances.

In most jurisdictions the law does not require the same strictness as to pleading, proof and procedure in proceedings to revoke liquor licenses as that which obtains in civil actions or criminal prosecutions generally. *See,* 45 Am Jur2d 620-21, Intoxicating Liquors § 189.

For the above reasons I believe that the rule thus announced is not warranted, and may result in unduly hampering the commission in carrying out its regulatory duties as to disorderly premises.