Argued May 3, affirmed June 6, 1977

## SWEARINGEN et al, *Petitioners,*
*v.*
## OREGON LIQUOR CONTROL COMMISSION, *Respondent.*
## (CA 7295)

564 P2d 1102

George A. Haslett, Jr., Portland, argued the cause for petitioners. With him on the brief was Marshall L. Amiton, Portland.

Al J. Laue, Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief were James A. Redden, Attorney General, and W. Michael Gillette, Solicitor General, Salem.

Before Schwab, Chief Judge, and Lee and Tanzer, Judges.

LEE, J.

**LEE, J.**

Petitioner, Magic Garden Restaurant, Inc., seeks review of an order of the Oregon Liquor Control Commission suspending its Dispenser Class "A" license for a period of 30 days.

On March 31, 1976 the Commission forwarded to petitioner a "Notice of Proposed Order of Summary License Suspension" indicating that an investigation had produced "reasonable cause to believe" that a violation of Oregon Administrative Rules, ch 845, § 10-185(1) had occurred, in that

"* * * during the months of November, December, 1975, and January, 1976, the gross receipts from the sale of food in [the] licensed establishment amounted to less than twenty-five percent of the gross receipts from the sale of both food and alcoholic liquor."[1]

The proposed suspension order was thereafter stayed upon petitioner's request that it be provided

---

[1] Oregon Administrative Rules, ch 845, § 10-185(1) provides as follows:

"Every commercial estabishment licensed under ORS chapter 472 must keep accurate daily records of account showing separately the amounts of all receipts from the sale of food and of alcoholic liquor on the licensed premises. Such records shall be kept available for examination by the Commission and its representatives at the licensed premises for a period of two years. The gross receipts from the sale of food by the licensee in such a licensed commercial establishment during every sixty-day period commencing after July 1, 1960, shall amount to not less than twenty-five percent of the gross receipts from the sale of both food and alcoholic liquor in such commercial establishment during the same period."

A prior "Notice of Proposed Order of Summary License Suspension" issued on January 28, 1976 had charged petitioner with violating the provisions of OAR 845-10-185(1) during the months of September, October, and November 1975; on April 14 petitioner was informed that this proposed order was being "converted" into a "Letter of Warning" which would become a part of its permanent record with the Commission. The existence of the "Letter of Warning," based in part upon an alleged violation of OAR 845-10-185(1) during the month of November 1975 represented no bar to the subsequent suspension based upon the "Notice" forwarded on March 31, 1976. Although both the notice of March 31 and evidence produced at the hearing on May 10, 1976 covered the entire period between November 1975 and January 1976, the Commission was, pursuant to the terms of OAR 845-10-185(1), authorized to suspend petitioner's license based solely upon the evidence of inadequate food sales during the 60-day interval covered by the months of December 1975 and January 1976.

[ 745 ]

with a hearing on the described "charge." At that hearing, convened on May 10, 1976, the Commission's inspector appeared and testified that he had contacted petitioner on February 6, 1976 for the purpose of auditing ledgers showing total food and liquor sales revenues and the percentage attributable to the sale of food for the months of November and December 1975 and January 1976, had inspected records provided by petitioner at his request, and had determined based upon a review of those records that the sale of food had amounted to only 3.4 percent of petitioner's combined liquor and food sales in November, 4.1 percent in December, and 3.3 percent in January.[2]

■ There is no dispute about the accuracy or legitimacy of either the records studied by the Commission's inspector or his analysis of those records; accordingly, his testimony constituted "substantial evidence" sufficient to sustain the charge upon which the suspension order was based. ORS 183.482(8); *Graham v. OLCC,* 25 Or App 759, 551 P2d 112, Sup Ct *review denied* (1976).

■ The 30-day suspension was not imposed in violation of petitioner's right to "due process" solely by virtue of the fact that the adjudicating agency, the Commission, relied upon an investigation undertaken by its own inspector to find that a violation of OAR 845-10-185(1) had occurred. *Withrow v. Larkin,* 421 US 35, 95 S Ct 1456, 43 L Ed 2d 712 (1975); *Palm Gardens, Inc. v. OLCC,* 15 Or App 20, 34, 514 P2d 888 (1973), Sup Ct *review denied* (1974)

Affirmed.

---

[2] On the date the inspection was made the inspector issued a "Notice of Violation" which indicated that petitioner had violated OAR 845-10-185(1) on "Feb 6, 1976." The adequacy of petitioner's food sales on February 6, 1976 was not, however, at issue in this case; the "Notice of Proposed Order of Summary License Suspension" forwarded on March 31, 1976—the "Notice" upon which the proceedings leading up to the suspension were based (ORS 472.189; 183.415(1) and (2))—specifically limited the "charge" to an alleged violation which had taken place between November 1975 and January 1976.