Argued January 23, affirmed March 4, petition for rehearing
denied April 10, petition for review denied May 14, 1974

MATTHEW, *Petitioner, v.* JURAS ET AL,
*Respondents.*

519 P2d 402

*Glen H. Downs,* Portland, argued the cause for petitioner. With him on the brief were Legal Aid Service-Multnomah Bar Association, Inc., and Ronald P. Byers, Portland.

*Al J. Laue,* Assistant Attorney General, Salem, argued the cause for respondents. With him on the brief were Lee Johnson, Attorney General, W. Michael Gillette, Solicitor General, and Janet A. Metcalf, Assistant Attorney General, Salem.

Before SCHWAB, Chief Judge, and FORT and THORNTON, Judges.

FORT, J.

Petitioner applied to respondent for aid-to-the-disabled benefits. ORS 412.510 through 412.630. The respondent denied the application on the ground that petitioner was not permanently and totally disabled as defined in ORS 412.510 (3).[1] Petitioner seeks judicial review of the resulting order pursuant to ORS 183.480.

He asserts that the evidence establishes he is a disabled person within the statute. Alternatively, he

---

[1] ORS 412.510 (3) provides:

" 'Disabled' means having a bodily impairment that is both permanent and total. A permanent disability is one likely to continue without substantial improvement throughout life or for an indeterminate period. A total disability is one which prevents performance of substantially all the ordinary duties of occupations in which a disabled individual is capable of engaging, having due regard to his training, experience and circumstances."

seeks remand to respondent because of alleged procedural errors employed by the Public Welfare Division during the processing of his claim, resulting in prejudice to his substantial rights.

It is conceded with respect to the first contention that our review of the evidence is governed by ORS 183.480 (7) (d), which provides in relevant part:

"(7) The court may affirm, reverse or remand the order. The court shall reverse or remand the order only if it finds:

"* * * * * *

"(d) * * * [T]he order is not supported by reliable, probative and substantial evidence in the whole record * * *."

Recently, in *Palm Gardens, Inc. v. OLCC,* 15 Or App 20, 26, 514 P2d 888 (1973), Sup Ct *review denied* (1974), we stated:

"* * * Under the substantial evidence rule, we may decide questions of law, but must limit ourselves to the test of reasonableness in reviewing findings of fact. 4 Davis, Administrative Law Treatise 114, § 29.01 (1958); ORS 183.480 (7). *See Bay v. State Board of Education,* 233 Or 601, 605, 378 P2d 558, 96 ALR2d 529 (1963)."

*See also: Ward v. Ore. State Bd. of Nursing,* 266 Or 128, 510 P2d 554 (1973).

■ Here, in addition to the petitioner's testimony and that of several lay acquaintances, the hearing officer also received in evidence the reports from at least three physicians. One, a general practitioner, examined the petitioner three separate times and concluded that he was permanently and totally disabled. She recommended also that he be examined by a specialist. Petitioner's injuries, the result of a motor accident, related

to neck and back strain and ruptured left forearm muscles. As a result, he was examined by an orthopedist, whose written report was received and entered into evidence by the hearing officer at the hearing. Petitioner was also examined by a psychiatrist whose written report was likewise made a part of the record. Both of these specialists concluded that petitioner was not permanently and totally disabled. It is clear, therefore, that there is substantial evidence to support the findings of the hearing officer.

Following the filing of his petition for judicial review in this court, petitioner sought and was granted leave to present additional evidence pursuant to ORS 183.480 (5).[2]

Thereafter, the parties, in lieu of the taking of additional testimony, filed in this court a Narrative Statement of Additional Evidence,[3] and stipulated

---

[2] ORS 183.480 (5) provides:

"If, on review of a contested case, before the date set for hearing, application is made to the court for leave to present additional evidence, and it is shown to the satisfaction of the court that the additional evidence is material and that there were good and substantial reasons for failure to present it in the proceeding before the agency, the court may order that the additional evidence be taken before the agency upon such conditions as the court deems proper. The agency may modify its findings and order by reason of the additional evidence and shall, within a time to be fixed by the court, file with the reviewing court, to become a part of the record, the additional evidence, together with any modifications or new findings or orders, or its certificate that it elects to stand on its original findings and order, as the case may be."

[3]

"* * * * *

"Pursuant to this Court's order granting Petitioner's MODIFIED APPLICATION FOR LEAVE TO PRESENT ADDITIONAL EVIDENCE, the parties submit this NARRATIVE STATEMENT OF ADDITIONAL EVIDENCE and stipulate

therein "that the statements herein are true and may be used in lieu of Findings of Fact by a Court-appointed Master in determining issues presented in Petitioner's

that the statements herein are true and may be used in lieu of Findings of Facts by a Court-appointed Master in determining issues presented in Petitioner's PETITION FOR JUDICIAL REVIEW.

"1. Aid to the Permanently and Totally Disabled (AD) in Oregon is a federally-aided public assistance program under the federal Social Security Act, administered by the Public Welfare Division of the Oregon Department of Human Resources. Eligibility criteria for benefits under the AD program are established in ORS 412.510 to 412.630, in the Public Welfare Division's Rules and Regulations and in the federal Social Security Act.

"2. A 'fair hearing' is the administrative procedure within the Public Welfare Division by which *inter alia* contested cases over eligibility for AD benefits are decided. The procedure for conducting fair hearings is established in 45 CFR Section 205.10, in Public Welfare Division Rules and Regulations, and in ORS chapter 183.

"3. The only way to apply for AD benefits is for the claimant to contact a Public Welfare Division Adult Service Worker (or caseworker) at a Public Welfare Division Branch Office. These caseworkers received specialized training and instruction on eligibility requirements for all public assistance programs, including the AD program. It is the caseworker's responsibility to determine whether an applicant might be eligible for the AD program and, if so, to obtain medical reports and prepare other application documents necessary to establish eligibility. Such documents constitute the AD application, and are submitted to the Public Welfare Division's Medical Review Team Unit in Salem, Oregon, which has exclusive authority to make the initial AD eligibility decision.

"4. Petitioner applied for public assistance by contacting a caseworker at the Multnomah County Branch Office on April 22, 1971 and obtained a continuing General Assistance Grant. The caseworker obtained various medical reports from licensed physicians who had examined the Petitioner, prepared the usual social summary and formal application form for AD benefits, and forwarded all documents to the Medical Review Team Unit on or about June 12, 1972 for the initial eligibility decision.

"5. The Medical Review Team Unit (hereafter MRT) is part of the Public Welfare Division's Assistance Department.

PETITION FOR JUDICIAL REVIEW." Invocation of ORS 183.480 (5) does not modify the foregoing rule, for under it, it remains the exclusive responsibility of

The MRT has two full-time members, both of whom are employees of the Public Welfare Division. One member is Wallace W. Roseboro, a specialist in medical social work who is the MRT supervisor. The other member is Walter L. Siefert, who is Mr. Roseboro's assistant. Mr. Siefert does not have a medical specialty or a graduate degree. The MRT has five physician consultants, all of whom are private practitioners in the Salem area. The physicians are employed to review medical reports submitted as a part of AD applications, and to advise the full-time MRT members as to the nature of the applicant's disability and the extent of his incapacitation. The MRT elgibility decision is based solely on information contained in medical reports and application documents; the applicant is not interviewed by a MRT member or examined by the consulting MRT physician.

"6. The Fair Hearings Unit is also part of the Public Welfare Division's Assistance Department, and responsible for conducting fair hearings. The Fair Hearings Unit consists of a supervisor, Mr. Lee McClelland, and five fair hearings officers, all of whom are full-time employees of the Public Welfare Division. A hearings officer is a quasi-judicial officer who presides at the fair hearing, and who prepares the findings of fact, conclusions of law, and a disposition recommendation which, when approved by his superiors, is the final order upon the hearing. A hearing officer's powers in a contested case commence when a fair hearing is requested.

"7. Marion Keith Putman is an Assistant Administrator of the Public Welfare Division, and is directly under the supervision of Andrew F. Juras, the Administrator of the Public Welfare Division. Mr. Putman is the administrator of the Assistance Department, and exercises supervisory authority over both the Medical Review Team Unit and the Fair Hearings Unit.

"8. The Petitioner's application for AD benefits was denied by the MRT on September 29, 1972. The basis of the denial was the judgment that the Petitioner's impairments are responsive to treatment and, therefore, do not constitute permanent and total disability as defined by AD requirements. Exhibit #19 in the Record Under Review in this proceeding is the required formal written notice to Petitioner of the MRT decision on his application for AD benefits. Mr. Siefert' initially reviewed Petitioner's application, and prepared; the

the agency to make all findings of fact. Examination of the Narrative Statement shows that the stipulated evidentiary matters do not significantly affect the finding

notice of decision after consulting the MRT consulting orthopedic physician.

"9. Subsequent to Petitioner's request for a fair hearing, Petitioner requested the Fair Hearing Officer, Ms. Lois Haskins, to compel the MRT members who made the initial decision of ineligibility to produce written statements of the medical findings and social data which supported the MRT decision. No one in the Fair Hearings Unit can order the MRT to prepare or submit such statements. Any request for such statements must be approved and enforced by Mr. Putman. Mr. McClelland tried to persuade the MRT members to submit such statements, but did not succeed. The written statements requested by Petitioner were never produced.

"10. Prior to Petitioner's fair hearing, and after Petitioner had been told by Mr. McClelland that the MRT would not produce the written statements described in paragraph 9, *supra,* Petitioner requested the Fair Hearing Officer, Ms. Haskins, to subpoena to the hearing the MRT members who participated in the initial ineligibility decision on Petitioner's AD application. Fair Hearing Officers are empowered to subpoena witnesses and documents to fair hearings, and do issue subpoenas for witnesses who are not Public Welfare Division employees. However, it is the practice and policy of the Public Welfare Division not to subpoena MRT members to a fair hearing if Mr. Roseboro's superiors conclude the MRT had followed proper procedure in processing an AD application. Petitioner's requests for subpoenas were referred to Mr. Putman and denied by Mr. Putman.

"11. Prior and subsequent to a fair hearing and prior to a final order on hearing it is the policy of the division for hearings officers to consult with members of the MRT if medical evidence appears which was not available to the medical review team at the time it made its determination and recommendation. Normally the hearing officer will accept the MRT evaluation of the additional evidence for purposes of establishing eligibility.

"In the event agreement is reached the medical review team recommendation may be amended to reflect that agreement or the fair hearing order may reflect the revised determination. In exceptional cases where the hearing officer and the review team cannot reach accord the conflict will be resolved by the Administrator of the division.

of the agency relating to the petitioner's disability but rather to procedural matters.

Petitioner's second contention is in the nature of a shotgun assault upon the procedures employed by the Public Welfare Division in its administration of the duties enjoined upon it under the Aid to the Disabled Law. Essentially, if we understand him correctly, he contends that they do not comply with the standards of fundamental fairness required under the due process clauses of the federal (amend XIV) and state (Art I, § 10) constitutions.

It is obvious that the Statement of Additional Evidence[④] is intended to furnish the factual foundation necessary to consider the due process contentions urged by petitioner.

The petition for judicial review first challenges the denial by respondent of his request for a subpoena to compel the attendance at the hearing of Wallace W. Roseboro, a member and supervisor of respondent's Medical Review Team.

---

"Subsequent to Petitioner's fair hearing request, but prior to his hearing, the medical report by Dr. Virginia Wilhelm marked Petitioner's Exhibit #15 (Tr. at 107) was reviewed by the MRT. The physical examination to which the report refers was authorized by the MRT. The MRT concluded that they would not change their eligibility decision because of that medical report, and communicated their conclusion to the Hearing Officer, Ms. Haskins.

"12. Ms. Haskins has been employed as a Hearings Officer for three years. She has never made a hearing decision contrary to an eligibility determination made by the MRT.

"* * * * * *."

We commend the parties for this efficient and expeditious utilization of the rights granted under ORS 183.480 (5).

④ Narrative Statement of Additional Evidence, supra, n 3.

ORS 183.440 (1) provides:

"The agency shall issue subpenas to any party to a contested case upon request on good cause being shown and, to the extent required by agency rule, upon a statement or showing of general relevance and reasonable scope of the evidence sought * * *."

Mr. Roseboro, as a member and supervisor of the Medical Review Team, was not himself in a position to offer testimony concerning the nature or extent of petitioner's disability, except on the basis of information and reports furnished to the Medical Review Team by others, as appears from part 5 of the Statement of Additional Evidence, supra. The function of the Medical Review Team is to review evidence furnished by others and from that review advise the Public Welfare Division whether, in its opinion, an applicant is a disabled person under the Act. No claim of fraud or other improper conduct is made. All of that information was available to petitioner and is a part of the record.

■ Thus, we are not here dealing with an effort to subpoena the authors of those medical reports, nor the sources of the information furnished to the Medical Review Team. We note, too, that opportunity was given to petitioner prior to the close of the hearing to keep that record open after the taking of the testimony. The record then shows the following:

"ATTORNEY [for petitioner]: I don't believe so at the present time. I think we may as well proceed with the decision on the record that it stands."

We think this was a waiver of any right to offer further testimony, whether from Mr. Roseboro or anyone else.

■ Furthermore, it is not clear what, if any, testi-

mony petitioner contends might have been elicited from Mr. Roseboro or any other member of the Medical Review Team which would have had "general relevance" to the matter at issue, as required by the statute. The assignment is without merit.

Petitioner next challenges the receipt into evidence of the medical reports and social data contained in the respondent's case file on petitioner's application. It is conceded these documents were hearsay.

Recently, in *Richardson v. Perales,* 402 US 389, 402, 91 S Ct 1420, 1428, 28 L Ed 2d 842 (1971), the Supreme Court said in a strikingly similar case also brought by an injured person for Aid to the Disabled benefits under the Social Security Act:

> "We conclude that a written report by a licensed physician who has examined the claimant and who sets forth in his report his medical findings in his area of competence may be received as evidence in a disability hearing and, despite its hearsay character and an absence of cross-examination, and despite the presence of opposing direct medical testimony and testimony by the claimant himself, may constitute substantial evidence supportive of a finding by the hearing examiner adverse to the claimant, when the claimant has not exercised his right to subpoena the reporting physician and thereby provide himself with the opportunity for cross-examination of the physician."

The court then set forth in detail nine separate reasons which led it to that conclusion. Petitioner does not claim that he was denied the right to subpoena or to cross-examine any staff person nor any of the doctors who actually examined him and whose written reports were received in evidence at the hearing. Thus, under *Richardson,* it is clear there was no error in the receipt of the medical reports as a part of the

evidence in the hearing nor in their consideration by the hearing officer or by their prior consideration by the Medical Review Team.

Lastly, petitioner attacks the findings of the hearing officer on the ground that, as an employe of the Public Welfare Division, she was not an impartial official and thus he was denied due process and, accordingly, he contends the hearing "was a sham." He relies primarily on *Goldberg v. Kelley*, 397 US 254, 90 S Ct 1011, 25 L Ed 2d 287 (1970).

A similar problem concerning who might, within constitutional standards, be qualified in an administrative proceeeding to serve as a hearing officer was considered in *Morrissey v. Brewer*, 408 US 471, 486, 92 S Ct 2593, 2603, 33 L Ed 2d 484 (1972). In an unanimous decision the court said:

> "This independent officer need not be a judicial officer. The granting and revocation of parole are matters traditionally handled by administrative officers. In *Goldberg*, the Court pointedly did not require that the hearing on termination of benefits be conducted by a judicial officer or even before the traditional 'neutral and detached' officer; it required only that the hearing be conducted by some person *other* than one initially dealing with the case * * *."

Davis, Administrative Law Text 224-25, § 10.07 (3d ed 1972), points out:

> "The status of the examiner should and does depend upon his functions. His two main functions are to preside and to prepare initial or recommended decisions. Both functions are definitely subordinate * * *. The examiner's role as a deciding officer is overshadowed by the power of the agency. That the examiner's initial decision may become the final decision of the agency if no party

appeals and if the agency does not of its own motion call up the case does not mean that the examiner has significant power, for the power is in substance only one of recommending. The only important power of decision relates to contested cases; the agency always decides such cases. The assignment of the examiner is not that of a judicial officer who makes a decision which is merely subject to review by an appellate tribunal. The key provision of the APA concerning the deciding function of the examiner is that 'the agency . . . shall have all the powers which it would have in making the initial decision.'

"* * * * * *

"To exalt the examiner to a position equal to or above that of the agency and to make him altogether independent of the agency would be clearly incompatible with the agency's continued responsibility."

*See,* Davis, supra at 226-27, § 11.01 for rationale underlying institutional or agency decisions.

■ Under the Oregon Administrative Procedures Act (ORS 183.310 to 183.500) it is clear that, as stated by Davis, supra, decisions made thereunder are agency decisions, as distinguished from those made by a judge. Examination of the Narrative Statement of Additional Evidence filed herein satisfies us that the hearing officer was an impartial officer within the standards of *Goldberg* and *Morrissey.*

The remaining assignments are without merit.

Affirmed.