Argued and submitted February 11, reversed and remanded May 25, 1983

AMUNDSON et al,
*Petitioners,*
*v.*
ADULT & FAMILY SERVICES,
*Respondent.*

(2-2202-KLB353-3; CA A23625)

663 P2d 810

Janet English-Young, Albany, argued the cause and filed the briefs for petitioners.

Christine L. Dickey, Assistant Attorney General, Salem, argued the cause for respondent. With her on the brief were Dave Frohnmayer, Attorney General, Stanton F. Long, Deputy Attorney General, and William F. Gary, Solicitor General, Salem.

Before Gillette, Presiding Judge, and Warden and Young, Judges.

GILLETTE, P. J.

## GILLETTE, P. J.

Petitioners seek review of a final order of the Adult & Family Services Division (AFSD) sustaining a branch office's denial of their application for benefits under the state Aid to Dependant Children (ADC) program. We reverse and remand, because the agency impermissibly delegated its decision making responsibility to a group of agency employes and consultants known as the Medical Review Team (MRT).

On September 16, 1981, petitioners Billy and Donna Amundson filed a claim for ADC assistance, because Donna (Mrs. Amundson) had been "incapacitated" by surgery for a ruptured ectopic pregnancy.[1] AFSD's Lebanon branch office denied the claim. After a hearing held at claimants' request, AFSD issued an order upholding the denial (Order #1). Petitioners petitioned this court for review, but AFSD voluntarily withdrew the order for reconsideration. See ORS 183.482(6). On July 29, 1982, the agency issued a Final Order on Reconsideration Order #2) that affirmed Order #1. Petitioners' amended petition for judicial review brought the case to this court.

They make seven assignments of error, most of which do not require discussion. Two assignments, however, raise serious questions about the role that MRT played in the agency's decision to deny petitioners' application for benefits. In order to understand the arguments, one must first understand the structure, function and status of MRT, both now and at the time the agency acted on petitioners' application.

Today, MRT is a body authorized by AFSD rule to assist the agency in the evaluation of medical evidence submitted to support claims for assistance. The team consists of one

---

[1] Petitioners made their claim under OAR 461-05-465(1)(b). That rule provides:

"(1) Eligibility for ADC may be established when a child has been deprived of parental support or care by reason of the physical or mental incapacity of the parent or parents. Deprivation of care and support because of incapacity exists when the parent or parents, as a result of the incapacity, is limited in one of the following ways:

"* * * * *

"(b) Will be unemployable due to incapacity which is expected to continue for at least 60 days after the date of request for assistance;

"* * * * *."

program specialist, three registered nurses and several consulting physicians under contract with AFSD. OAR 461-05-230(1). Among its other responsibilities, MRT "is to determine * * * [i]ncapacity for ADC cases using medical and social documentation * * *." OAR 461-05-230(2). Although the MRT rules had not yet been promulgated at the time that petitioners applied for ADC, MRT apparently did the same things then that it is now authorized by rule to do. *See Matthew v. Juras,* 16 Or App 524, 527-31, n 3, 519 P2d 402 (1974). We now turn to MRT's activity in the present case.

Petitioners' medical evidence consisted of three reports from Mrs. Amundson's doctor, Dr. Hartmann. After AFSD received the first two reports, the branch office sent the reports to MRT. MRT issued a "Medical Eligibility Decision Document" concluding that

"* * * the current medical information * * * does not represent an impairment of sufficient severity to meet requirements for incapacity/unemployability."

Petitioners then submitted Dr. Hartmann's third report. MRT reviewed this report and concluded:

"The medical report does not document physical or mental disability which would prevent Mrs. Amundson from engaging in employment within her competence.

"Vaginitis, [the post-surgery condition which Mrs. Amundson claims complicated and significantly prolonged her recuperation,] along with surgery performed, does not meet disability requirements."

As noted, the Lebanon branch office denied the claim, and petitioners requested a hearing. After the hearing, AFSD issued Order #1, which affirmed the branch office denial with the following explanation:

"In the instant case, the State *MRT made the denial decision.* The hearings officer, in an independent decision, questions Donna Amundson's medical eligibility for ADC. She was released from the hospital just four days after surgery and by the Doctor's own opinion, recuperation for abdominal surgery is four to six weeks. The Doctor gives no evidence of the severity of the vaginal infection. Unless of a severe nature, that would not prevent employment. The MRT initially made the incapacity decision and the additional medical received in the hearing was reviewed by the team. *The hearings officer*

*accepts the expertise of MRT with its medical consultants and accepts the resultant decision."* (Emphasis supplied.)

After AFSD withdrew that order for reconsideration, the hearings officer received a memorandum from MRT to the Lebanon branch of AFSD. The memorandum described the composition of MRT— "two physicians, one of whom is an obstetrics-gynecology specialist, and five registered nurses"— and stated:

"It was the unanimous determination of the group that Mrs. Amundson did not meet the criteria for incapacity as stated in Volume II-G, Rule 461-05-465.

"The surgery performed on September 15, 1981 does not indicate supportive data which would prevent Mrs. Amundson from performing child care and homemaking for a period of at least 60 days after the date of request for assistance. Vaginitis does not support a need for an extended period of disability."

Petitioners objected by letter to the admission of the memorandum into evidence. Nonetheless, the Division appended the memorandum to Order #2, stating that the reconsideration "takes into account the makeup of the MRT and the reason for its decision." Order #2 concluded:

"A review of the medical documentation and MRT's decision in the matter has been conducted by the Chief Hearings Officer. *We conclude that the Team made the correct decision* based upon the documentation *and that the Team acted within the limits of its expertise and that the decision of the Team should be affirmed.*

"* * * * *

"The final order of December 7, 1981 is hereby affirmed." (Emphasis supplied.)

Petitioners object to the dominant role played by MRT in AFSD's response to their claim. They contend that AFSD violated their due process rights and statutory law by (1) "improperly [taking] official notice of the expertise of the Medical Review Team" and (2) failing to make an independent review of the evidence. Petitioners first argue that, because the hearings officer had no apparent medical expertise of her own, and because she rejected the medical evidence introduced in support of petitioners' claim, she "must have relied on the improperly noticed medical 'expertise' of MRT" in finding petitioners ineligible. In other words, the hearings officer

relied improperly on the expertise of staff. Petitioners' second argument is that the hearings officer "rubber stamped" MRT's decision about their medical eligibility without doing an independent review of the evidence, thereby depriving them of a decision from an impartial hearings officer, as guaranteed by agency rule (OAR 461-09-000). Taken together, these arguments constitute a complaint that AFSD improperly delegated the authority to make medical eligibility decisions to a group of "medical experts" that—at the time the agency decided this claim—lacked authority to make such decisions. We agree.

To begin with, we note that an agency decision-maker's acknowledgement and use of the expertise of agency staff is not *per se* impermissible. Agency employes may be hired because of their expertise, and an agency's decisions can, in appropriate cases, be improved by an expert's assistance in the evaluation of technical evidence that may be beyond the understanding of the decision-maker.[2] However, the expertise of agency members and staff cannot serve to inject new, extra-record evidence into the decision-making process, *see Rolfe v. Psychiatric Security Review Board,* 53 Or App 941, 633 P2d 846 (1981); ORS 183.450(2) and (4), nor should the opinions of staff experts be accepted, at face value and without review, by the agency officer or officers with decision-making responsibility.

Order #1 states that MRT "made the denial decision" and that the hearings officer "accepts the expertise of MRT * * * and accepts the resultant decision." Order #2, after much discussion of MRT but no discussion of the medical evidence, states that "the Team acted within the limits of its expertise and * * * the decision of the Team should be affirmed." Although both orders pay lip service to the notion of independent review by the appropriate authority,[3] the fact is that the hearings officers did not look at the evidence and make independent assessments of eligibility, using MRT's

---

[2] For an excellent discussion of the advantages and disadvantages of agency decision-makers' consultation with staff specialists, *see* Davis, *Administrative Law Treatise,* (2d ed), ch 17, §§ 17.8-17.10.

[3] Order #1 states: "The hearings officer, in an independent decision, questions Donna Amundson's medical eligibility for ADC."

Order #2 states: "A review of the medical documentation and MRT's decision in the matter has been conducted by the Chief Hearings Officer."

opinions as advisory documents. Instead, they viewed MRT's recommendations as "decisions" about eligibility that should be "affirmed" unless wrong. Stating the problem in "scope of review" terminology, the hearings officers exercised a limited scope of review similar to this court's scope of review in administrative law cases, *see* ORS 183.482(8), when they should have conducted a *de novo* review of the medical evidence.

Petitioners were entitled to have their eligibility determined by an impartial hearings officer appointed by AFSD. OAR 461-09-000(2). Instead, eligibility was decided by staff experts and consultants with no legal authority to make such decisions.[4]

We therefore reverse and remand to AFSD for reconsideration of petitioners' claim for ADC due to incapacity.

---

[4] We note again that since the time AFSD acted on petitioners' application, the agency has promulgated rules giving MRT an official existence and clearly deliniated responsibilities. We express no opinion as to the effect these rules will have on similar cases that might arise in the future.