Gordon M. Lipetz, J.
This is a motion by plaintiff for summary judgment for the injunctive relief demanded in the complaint. Defendant cross-moves for judgment dismissing the complaint and for summary judgment on his counterclaim.
The State has instituted this action against a private land owner for an injunction restraining him from filling, dredging or otherwise altering tidal wetlands and adjacent areas owned by him in the Town of Southold, Suffolk County, and directing him to remove all fill materials placed thereon and restore the land to its prior condition. Its complaint alleges that defendant placed fill upon his land in violation of the Tidal Wetlands Act (ECL 25-0202, subd 1) in that he failed to obtain a permit to do so, and on information and belief, "may place additional fill” thereon. No allegation is made that he has attempted or threatened to take such action.
Defendant’s answer denies the material allegations of the complaint and sets forth an affirmative defense that his land and the placing of fill thereon was not within the purview of the Tidal Wetlands Act. A counterclaim is also interposed for *108 damages sustained by reason of certain construction and changes made by the State upon adjoining lands, which destroys the fresh ground water supply vitally needed for his consumption and the irrigation of his adjacent farmland, and for harassment by Environmental Conservation officers.
In his opposing affidavit defendant states that all fill upon his land was brought there prior to September 1, 1973, the effective date of the Tidal Wetlands Act. His statement is uncontroverted by plaintiff. It appears that upon the advice of his attorney he was spreading the fill between April and July 27, 1974, when criminal charges were brought against him by plaintiff’s Environmental Conservation officer, after which no further spreading was done. The lengthy opposing affidavit of defendant’s attorney states that before advising the defendant to spread the fill he consulted Donald Larkin, a civil engineer in charge of environmental analysis for the Department of Environmental Conservation, and was advised by him that no permit was required in view of the nature and circumstances of defendant’s land. He complains bitterly that in numerous subsequent conferences with Mr. Larkin, Mr. Orensky, the department’s regional attorney, and various other environmental conservation officers he was advised that defendant’s land would not be inventoried as tidal wetlands pursuant to ECL 25-0201, and that he was led down the primrose path by them.
While plaintiff’s reply affidavit characterizes the various charges of harassment and double dealing as "a tale of woe”, they are not denied. Furthermore, it appears that after the opposing affidavits were submitted the State withdrew the criminal charge against the defendant.
The basic issue here is whether the defendant’s land constitutes "tidal wetlands” within the meaning of the Tidal Wetlands Act (ECL art 25). This is a case of first impression.
The declared public policy of the State is to preserve and protect tidal wetlands, which are defined in ECL 25-0103, as follows:
"1. 'Tidal Wetlands’ shall mean and include the following:
"(a) those areas which border on or lie beneath tidal waters, such as, but not limited to, banks, bogs, salt marsh, swamps, meadows, flats or other low lands subject to tidal action, including those areas now or formerly connected to tidal waters;
*109 "(b) all banks, bogs, meadows, flats and tidal marsh subject to such tides, and upon which grow or may grow some or any of the following: salt hay (Spartina patens ***)*** tall cordgrass (Spartina pectinata * * *), hightide bush (Iva frutescens) * * * groundsel (Baccharis halmilifolia), marsh mallow (Hybiscus palustris)”.
All of the afore-mentioned grasses and plants grow upon defendant’s land, which comprises approximately one acre and is bounded on the south by the Main (State) Road 227 feet; on the west by land of New York Telephone Company, upon which there is a large masonry building; on the north by the Long Island Railroad tracks and roadbed; and on the east by land of Morris, upon which there is a large steel boat storage building. It is below the grade of the Main (State) Road to the south and the railroad property to the north. Main (State) Road is only about 250 feet north of Peconic Bay opposite defendant’s land.
Defendant claims that his land is not tidal wetland because it would not be "subject to such tides” except for the fact that many years ago when the Main (State) Road was built, the State constructed a gutter trench five feet wide along the northerly side thereof with a culvert under the road and a large 15-inch pipe running southward some 250 feet into Peconic Bay. A ditch upon defendant’s property drains water therefrom into the gutter trench and it then flows through the culvert and pipe into the bay. By reason of this drainage arrangement, constructed by the State, incoming tides force tidal water northward through the pipe and culvert and into the gutter trench and ditch, thereby bringing tidal waters upon defendant’s land. Thus, the land is not natural tidal wetlands, although tidal waters come upon it by reason of the State’s action on adjoining lands and sustain the growth of vegetation which can be supported only by tidal water.
To conclude that the Tidal Wetlands Act was intended to include such artificially created wetlands unreasonably strains the statutory language. The whole thrust and purpose of the Tidal Wetlands Act is to preserve lands subject to the natural action of the tides and prevent their despoliation and destruction, for they provide a source of marine food production, a wildlife habitat, flood and storm control, recreation, oxidation of pollution, relief from sedimentation of streams, an area for education and research, and open space for aesthetic appreciation. (Legislative findings, L 1973, ch 790, § 1.)
*110 Defendant’s land provides none of these purposes and it is unrealistic to believe that it will ever serve any of the objectives contemplated by the statute, save as a possible nesting area for a few occasional birds. This is substantially conceded by plaintiff. The reply affidavit states that if defendant had applied for it, "a permit may well have been issued” and that the land may well be omitted from the "inventory of tidal wetlands” now being compiled pursuant to ECL 25-0201.
Upon these facts the court holds that the Tidal Wetlands Act was not intended to apply to a ditched one-acre parcel such as defendant’s, surrounded as it is by industrially developed land and adjacent to farmland, in which tidal water is artificially induced into ditches, and only at high tide. The complaint is therefore dismissed.
The defendant’s motion for summary judgment on his counterclaim is denied, insufficient facts having been presented to demonstrate that there are no issues of fact with respect thereto. Additionally, the counterclaim must be dismissed for lack of jurisdiction. It presents a cause of action against the State for money damages and must be brought in the Court of Claims. (NY Const, art 6, § 9; People v Greylock Constr. Co., 213 App Div 21, affd 240 NY 710.)