OPINION OF THE COURT
Frank Composto, J.
In this action by the State to recoup funds paid to defendants, operators of a health care facility (Farragut Nursing Home) pursuant to a rate of reimbursement established provisionally and subject to later audit for adjustment, the State moves for summary judgment and to strike out the answers of the defendants Farragut Nursing Home, a partnership (Farragut) and of the partners, Herbert Tuckman (Tuckman) and Esther Ostreicher (Ostreicher).
It is undisputed that for the years 1972, 1973 and 1974 defendant Farragut, a licensed health care facility, furnished services to indigent patients in the Medicaid pro *438 gram established by Congress, and administered by each State with its own funds as supplemented by Federal grants. A provisional rate of reimbursement is established for each health care facility based on its estimated costs and expenditures. This rate is subject to later change after an audit is made of the books and records of the facility. An audit was made by plaintiff and defendants were duly notified by letter dated November 23, 1976 that the “audit of your financial cost report for the years ending 1972-4 * * * was completed * * *, disclosed the adjustments which are detailed on the attached schedule. These adjustments are final unless we receive a written protest within 30 days from receipt of this letter. Such request must be in writing detailing each adjustment disputed and setting forth the reimbursement principle or basis for disputing each item”.
The notice of audit was answered by Litt & Prager (L & P), certified public accountants on behalf of Farragut stating “we wish to appeal the audit findings”. Upon request, L & P had Farragut formally advise plaintiff “that the firm of litt & prager has been designated by us to act as our representatives in the appeal”. The notice of retainer of L & P was signed by Ostreicher on behalf of Farragut. Defendant Tuckman individually retained the law firm of Gluck, Romano & Tuckman (M. Tuckman) to represent him on the audit appeal. Thus, all defendants were represented on the appeal and all defendants agreed either by their conduct of the appeal or expressly in writing, that “It was acceptable * * * that the manner of adjusting this appeal be one of correspondence rather than personal appearance so that the time and energy of all of the various parties expended in this matter would be minimized”. No bureau review in Albany was requested. Each defendant submitted without restrictions the proof each believed to be most cogently responsive and all defendants were given more than ample time to submit their proof. Where defendant stated that judgments of the union were not readily available, plaintiff co-operatively agreed to accept a “notarized statement confirming the amounts currently due to the union”.
On a review of all the proof submitted by the defendants a determination was made “Based on the data presented, *439 the 1972 Audit Adjustment should be held. Since HIM-15 is specific about payments to the Pension Fund, no unpaid costs can be allowed; therefore, only the amounts the Welfare and Dental Fund should be allowed for 1973 and 1974”, a partial recognition of defendants’ appeal. The final determination that the appeals “completed by the Bureau of Audit Appeals in accordance with Part 86-2.7(e) of the Commissioner’s Rules and Regulations” were sent to the respective representatives of the defendants and to the defendants individually. Neither representative, M. Tuck-man, nor L & P denied receiving the determinations and none of the defendants either requested or commenced any further proceedings to review the final determination. Formal objections thereto were raised for the first time in this action.
The foregoing statement of facts constitutes this court’s findings and are based on the papers and exhibits before the court.
For facility and clarity of determination of the issues presented on this motion, the court, initially and in sequence will consider the defendants’ defenses and counterclaims.
Although no formal answer has been interposed on behalf of the partnership, Farragut, nevertheless the court will consider the evidence in opposition to the original motion for summary judgment as the answer of said defendant.
In each of the formal answers of the individual defendants, the Statute of Limitations is pleaded as a bar to plaintiff’s action in recoupment of overpayments made to Farragut. The defendants structure their respective positions on the lapse of time commencing from the reimbursement payments made to Farragut. But neither defendant considers nor recognizes that those payments were made “on the initial submission of base year data and reports * * * [and must] be construed to represent a provisional rate until such audit is performed and completed, at which time such rate or adjusted rate will be construed to represent the audited rate” (10 NYCRR 86-2.7 [a]; emphasis added.) Thus, no cause of action on behalf of the State commenced *440 to accrue on the provisional payments that were paid. Neither the State nor the health facility recipient construed those payments as firm and fixed amounts due and payable to the health facility. This ineluctable conclusion becomes evident from a reading of 10 NYCRR Subpart 86-2.
Section 86-2.2, captioned “Financial and statistical data required”, commands in subdivision (a) “Each residential health care facility * * * [to] complete and file * * * annual financial and statistical report forms * * * [and] must report their operations * * * on a calendar-year basis.” Subdivision (b) then states that “Federal regulations require the submission of cost reports to the State agency no later than three months after the close of the cost reporting year.” Subdivision (c) then provides for a 2% penalty reduction in the current rate “In the event a residential health care facility fails to file the required financial and statistical reports”. Section 86-2.3 mandates, as captioned, “Uniform system of accounting and reporting” and 10 NYCRR 86-2.4, 2.5 and 2.6 provide that the reports shall be in accordance with generally accepted accounting principles certified by an independent licensed public accountant and by the operator or officer of the facility.
Until those reports are filed there can be no determination on whether any part of the payments made to the facility constitute overpayments nor does any obligation arise to make refund. Schematically, 10 NYCRR 86-2.7 provides for “Audits”. Subdivision (a) thereof declares that “All fiscal and statistical records and reports shall be subject to audit” and requires the facility to keep and maintain all of its “books, records and documentation * * * for a period of time not less than six years from the date of filing, or the date upon which the fiscal and statistical records were to be filed, whichever is the later date”. Subdivision (b) directs the State agency to conduct “field audits * * * of the records of residential health care facilities”. On completion of the audit the facility is accorded the right of conference and may appear in person or by its representative (10 NYCRR 86-2.7 [d]). A copy of the audit report must then, as in the instant case, be furnished to the facility and “The audit report shall be final unless within *441 30 days of receipt of the audit report, the residential health care facility initiates [as in the instant action] a bureau review” (10 NYCRR 86-2.7 [e]). Subdivision (f) then provides that the “facility shall be notified in writing of the determination of the controverted items of the final audit report * * * The audit finding as adjusted in accordance with the determination of the bureau review shall be final, except that the residential health care facility may, within 30 days of receipt of the determination of the bureau review, initiate á hearing to refute those items of the audit report adverse to [it]”.
No action to further refute the controverted items was taken by defendant within the 30-day period. Thus, the commencement and the accruing of a cause of action on behalf of the State first comes into play on the twofold action of the State under subdivisions (g) and (h) when rate revisions are made which “shall be made retroactive to the period or periods during which the rates based on the periods audited were established. Any resulting overpayment or underpayment shall be satisfied” (10 NYCRR 86-2.7 [g]; emphasis added). The “overpayments resulting from rate revisions shall be subject to such penalties as the Commissioner of Health may impose” (10 NYCRR 86-2.7 [h]). Thus, neither the State nor the facility can determine whether there was an underpayment giving the facility a right of recovery or an overpayment, with or without a penalty, according the State a right of recovery of the fixed amount thereof. The bar of the Statute of Limitations, be it the six-year limitation for money had and received or the shorter two-year time bar under CPLR 203 (subd [f]) “from actual or imputed discovery of facts” (not here applicable as no fraud is claimed) or under CPLR 213 (subd 5) from the discovery of spoilation or other misappropriation of such property does not apply to this action. There was no discovery of overpayment until the final audit particularly since some of the contested items were found in defendants’ favor. The State could have no prior knowledge of defendants’ proof, which is the obvious reason for providing for an opportunity to the facility to contest the State’s findings to determine whether there was an “overpayment” or “underpayment”.
*442 Accordingly, this court holds that the statutory time bar commenced after the final audit dated May 22, 1979 and that this action was timely commenced on January 22, 1980 by the service of a summons and motion for summary judgment in lieu of a complaint (see Matter of Silberman v Whalen, 70 AD2d 537 [wherein the court stated “Nor is the proceeding barred by the Statute of Limitations, which begins to run on the date of the final order of determination after the hearing, not on the date of notice of the administrative hearing”]).
The second affirmative defense of defendant Ostreicher and the first, second, third and seventh affirmative defenses of defendant Tuckman are all without merit and an attempt to have this court substitute its opinion and its findings for that of the statutorily created agency duly empowered to make the findings that shall become final on a failure to contest them within the requisite time frames. As stated in the guidepost case of Matter of Evans v Monaghan (306 NY 312, 323-324), “Security of person and property requires that determinations in the field of administrative law should be given as much finality as is reasonably possible. The cases cited indicate that the rule of res judicata is applicable to such determinations as well as to the courts wherever consistent with the purposes of the tribunal, board or officer * * * Any general relaxation of the rule of res judicata is inadmissible even in strictly administrative matters.”
Defendants “can hardly raise an issue of error in computation of the overpayment because of the audit. [They] did not protest the revision or supply additional data to refute it within the time provided.” (Matter of Fahey v Whalen, 54 AD2d 1097; see, also, De Simone v South African Mar. Corp., S. A. Morgenster, 82 AD2d 820; Clove Lakes Nursing Home v Whalen, 45 NY2d 873.)
Moreover, defendants’ time to fault the final audit and of plaintiff’s right to recoup the overpayments has long since expired (see Solnick v Whalen, 49 NY2d 224 [four months for an article 78 proceeding]; and Matter of Klein v Axelrod, 81 AD2d 935, affd 54 NY2d 818 [wherein the court stated, “While we agree that petitioner failed to exhaust his administrative remedies, those remedies are no longer *443 available to him since the 30-day time limitation within which he was obliged to pursue his administrative appeal * * * has long since expired”]).
The second and third affirmative defenses of defendant Tuckman are similarly without merit. Defendant attempts to spell out laches, waiver and estoppel barring plaintiff’s right to recoup the overpayment by reason of a letter dated August 30, 1978 from the Director of the Bureau of Audit and Investigation informing Tuckman that an audit “recently completed by the Office of Special Prosecutor for Nursing Homes in consultation with the Bureau of Audit and Investigation, disclosed no adjustments”. The letter does not refer to the pending proceeding before the Bureau of Audit Appeals, nor does it terminate those proceedings. On the contrary, that letter states that if defendant Tuck-man “may wish to exercise your right to appeal the audit findings. If you choose to appeal you may do so by a Review within 30 days of receipt of this final audit report.” Defendants do not annex the final audit report from which they may wish to appeal. At best, the letter by itself without the audit referred to is most confusing and certainly warranted inquiry by defendant. Above all, the letter compelled defendants to affirmatively act when they received the final audit on May 27, 1979 which was manifestly adverse to defendants. Defendants delayed production of the letter despite plaintiff’s repeated demands and until this motion took no action on the letter.
Defendants cannot maintain that they relied on the letter to their injury or that there was any change in position prejudicing any of their rights or that there was any undue delay in plaintiff proceeding against defendant. The delay in ultimately making the final audit and in the rendering of the conclusion thereon were self-created by defendants in their repeated requests for extensions of time. In any event, as this court has found, this action was timely instituted within the applicable Statute of Limitations. The defense of laches does not apply to an action for recovery of money due when such action is brought prior to the bar of the Statute of Limitations (see Pollitz v Wabash R. R. Co., 207 NY 113; Bohemian Brethren Presbyt. Church v Greek Archdiocesan Cathedral of Holy Trinity, 94 Misc 2d *444 841, affd 70 AD2d 538; see, also, Matter of Hacker v State Liq. Auth. of State of N. Y., 19 NY2d 177 [with respect to the defense of estoppel]).
The sixth affirmative defense of defendant Tuckman is at best superficial. It is elementary both in common law and by statute (Partnership Law, § 67) that the dissolution of a partnership does not discharge an existing liability of a partner. No agreement or conduct of the State is alleged whereby the State accepted Tuckman’s partner Ostreicher or any other person as a primary debtor in release or discharge of Tuckman.
The afterthought added to the defense of dissolution of the partnership that the notice of the final audit given to all defendants was in all respects insufficient is without merit. The individual defendants, and in any event, their respective representatives, each received the final audit, conclusions thereon and basis thereof under the statute cited. As qualified representatives of defendants, they are chargeable with knowledge of further procedures that should be followed on behalf of their respective clients, if a further appeal was desired. No complaint may at this time be heard that defendants may have appealed further if they were given the notice in the words and phrases that they now claim.
Lastly, as to each of the counterclaims of the individual defendants, this court will not comment on the merit thereof as this court lacks jurisdiction to consider them as such. Suits, inclusive of counterclaims, against the State or a State agency must be asserted in the Court of Claims (see Benz v New York State Thruway Auth., 9 NY2d 486; State of New York v Lang, 84 Misc 2d 106, affd 52 AD2d 921; State of New York Dept. of Mental Hygiene v Schneps, 95 Misc 2d 828).
Accordingly, plaintiff’s motion for summary judgment in the sum of $64,452 is granted and the affirmative defenses and counterclaims of defendants are stricken.